In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-01-278 CR


____________________



DONALD C. DECLUITT, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 356th District Court


Hardin County, Texas


Trial Court Cause No. 15,094






O P I N I O N



 A jury convicted appellant Donald C. Decluitt of aggravated sexual assault of an
eleven year old child ("C.W.") and assessed a punishment of twenty-five years of
confinement in the Texas Department of Criminal Justice--Institutional Division. See Tex.
Pen. Code Ann. § 22.011(a)(2)(A), (c)(1) (Vernon Supp. 2002). On appeal Decluitt
claims the trial court erred in failing to reopen the evidence to allow additional evidence
from two witnesses who had testified at trial. 

Background Facts


 Both Decluitt and C.W. testified to the events on the date of the alleged offense. 
Both related that C.W.'s mother was out of town and that Decluitt took C.W. and her
brother to a school dance that night and picked them up afterwards. Decluitt admitted he
had been drinking earlier in the evening. C.W. thought he was drunk. They both
indicated Decluitt came in C.W.'s bedroom that night. But the similarity of the stories
ends there.

 C.W. testified that Decluitt came in her room, told her she was screaming, and took
her to his room. She said she returned to her room, but Decluitt came and brought her
back to his bedroom. He took his clothes off, pushed her on the bed, locked the door, and
removed her underwear. C.W. described the ensuing sexual assault in graphic detail.

 Decluitt testified the children went to bed, while he spent time on the computer. 
He indicated that when C.W. began "whining" in her bedroom, he checked on her and
then returned to his computer. He testified that when she later began "whining" again,
Decluitt went to her room, picked her up, and put her in bed with him. He testified he was
clothed. When he awoke, she was "laying right up under me." Decluitt pushed her over,
and C.W. awoke; he told her to return to her own bed. 

 The jury heard how Decluitt was found naked in C.W.'s bed on another occasion, 
which he told the jury was a sleepwalking episode. And the jury heard that when he was
drinking he had expressed a desire for his wife to have sex with his friends. The jury also
heard how he offered alcohol to C.W.'s sister and heard the sister relate how Decluitt
asked if he could perform oral sex on her. 

 The record of the case-in-chief also contains evidence from various witnesses who
testified regarding the complainant's lack of veracity. A witness explained that the child's
reputation for truth and veracity was bad. A friend of Decluitt indicated C.W. lied on
occasions. The counselor and principal from a school the child had attended both related
C.W. had a bad reputation for truth-telling. In addition to C.W.'s bad reputation for truth-telling, the record is replete with evidence of "bad acts" and problem behavior -- violent
conduct, aggressive behavior, anger, cursing at parents and teachers, lying, disobedience,
disruptiveness in class, hallucinating, and self-mutilation. C. W. had been admitted to the
Beaumont State Center on three separate occasions, and at the time of trial she lived at the
Waco Center for Youth. 

 Reopening The Evidence


 Decluitt presented a defense that called into question the child's credibility. As
noted herein, various witnesses, including some of those testifying for the State, attested
to C.W.'s bad reputation for truth-telling. After both sides rested their cases, the next
morning the attorneys for the State and the defense informed the trial judge that two
prosecution witnesses had approached Decluitt's attorney and indicated their desire to
testify further in the case. The trial court then held a hearing outside the presence of the
jury to determine whether to reopen the evidence. S. G. ("Shirley"), the mother of the
complainant, and L.G. ("Larry"), Shirley's husband and current stepfather of the child,
testified by bill of exception. 

Larry's Proffered Testimony


 Larry expressed doubts about whether Decluitt committed the offense. Because
Larry was concerned that C.W. might make false accusations against him, he expressed
fear at the possibility of being alone with her. Larry also mentioned he had posted
Decluitt's bond because of his (Larry's) uncertainty that Decluitt had committed the act. 
In addition to his doubts about C.W.'s veracity, Larry also indicated C.W.'s sister had a
bad reputation for truth-telling. During the State's cross examination at the hearing, Larry
acknowledged that neither C.W. nor her sister ever indicated to him that they were not
telling the truth; the story they told to the Garth House interviewer in October 1999 was
basically the same story they told at the trial in 2001. He acknowledged he had already
testified during the case-in-chief that C.W. had a bad reputation for telling the truth and
reiterated his opinion once again. 

Shirley's Proffered Testimony


 Shirley also expressed doubts about whether Decluitt, her ex-husband, had
committed the offense. She confirmed Larry's testimony that he is never alone with C.W.
because of a fear of false accusations. Shirley stated, "the jury needs to know that I'm not
absolutely . . . convinced, you know. I know my daughters." As with Larry, however,
Shirley's testimony at the hearing was not the first time she attested to C.W.'s propensity
to lie and manipulate; during the case-in-chief, Shirley referenced such problems more than
once. 

 Q. [Defense counsel]: Okay. She's manipulative, isn't she? 

 A. [Shirley]: Sometimes.

 Q. She cons people, doesn't she?

 A. Sometimes. 

 . . . .


 Q. She lies, doesn't she?

 A. Sometimes. 

 . . . .

 Q. All right. All of her disruptive behavior, lying, aggressiveness was all 
going on way before any of this was alleged to have happened, wasn't it?

 A. Yes, sir. 

 Q. Okay. And how long has she been at the Waco School for youth?

 A. She's been there since December. 


 Like Larry, Shirley testified she believes it is possible C.W. and her sister 
concocted the story. Like Larry, Shirley also acknowledged that C.W. had never recanted
her story and that C.W.'s description of the event remained basically the same since her
initial recounting of it in October 1999. Shirley specifically stated she had no new
evidence indicating that C.W. or C.W.'s sister had made up the events they described. 
But Shirley stated, "I have my doubts. I'm just . . . not absolutely convinced, and I just
hate to see something happen if I'm not absolutely convinced." In explaining why she
doubts C.W. is telling the truth, Shirley gave two examples: C.W. went to a friend's
house after school one day rather than coming home as she was supposed to; C.W. told
Shirley she would not "hang out" with someone Shirley thought was not a good influence,
but did so anyway. 

The Judge's Ruling


 At the conclusion of the hearing, the trial judge explained his ruling:

 I find no new substantive facts that I feel would help this jury in making a
determination of guilt or innocence. In fact, I think it's just an expounding
on the testimony that they have given throughout this trial of this case in
chief. I find--in listening to the testimony, I find no exculpatory statements
that I feel would have an effect, one way or the other, on the outcome of this
case. 


Based on the testimony presented at the hearing by Larry and Shirley, the trial judge
denied the request to reopen the evidence. 

Governing Statute and Standard of Review


 Reopening of the evidence in a case is governed by Tex. Code Crim. Proc. Ann.
art. 36.02 (Vernon 1981). "The court shall allow testimony to be introduced at any time
before the argument of a cause is concluded, if it appears that it is necessary to a due
administration of justice." Id. The trial court's decision to reopen a case is left to the
sound discretion of the trial court. Cain v. State, 666 S.W.2d 109, 111 (Tex. Crim. App.
1984). The discretion is not unlimited, however. Id. In applying the abuse of discretion
standard, the Court of Criminal Appeals has held that "irrespective of its weight, or of its
probative value or cumulative character, or the issue upon which it is offered, . . . if the
evidence was admissible and offered before the reading of the charge and prior to
arguments, unless it appears its introduction would have impeded the trial or interfered
with the due and orderly administration of justice, it will be reversible error to refuse the
request to reopen for its receipt." Vital v. State, 523 S.W.2d 662, 664-65 (Tex. Crim.
App. 1975) (footnote omitted). The Corpus Christi court of appeals has stated the
requirements for reopening the evidence in a four prong test: (a) The witness was present
and ready to testify; (b) the request to reopen was made before the charge was read to the
jury and final arguments were made; (c) the court had some indication of what the
testimony would have been, and was satisfied that the testimony was material and bore
directly on the main issues in the case; and (d) there was no showing that introduction of
the testimony would have impeded the trial or interfered with the orderly administration
of justice. Doyle v. State, 24 S.W.3d 598, 601-02 (Tex. App.--Corpus Christi 2000, pet.
ref'd); see also Sims v. State, 833 S.W.2d 281, 286 (Tex. App.--Houston [14th Dist.]
1992, pet. ref'd). We hold that, under the circumstances here, the trial court erred in
refusing to reopen the evidence.

 However, even when there is trial court error in refusing to reopen the evidence,
the reviewing court must conduct a harm analysis. Kennerson v. State, 984 S.W.2d 705,
707 (Tex. App.--Houston [1st Dist.] 1998, pet. ref'd). As pointed out by the First Court
of Appeals, no error, except for certain federal, constitutional errors labeled by the United
States Supreme Court as "structural," is categorically immune to a harmless error analysis. 
Id. (Trial court erred in failing to reopen evidence, but under harmless error analysis, the
conviction was affirmed.) (citing High v. State, 964 S.W.2d 637, 638 (Tex. Crim. App.
1998)). 

 The trial court's refusal to reopen the evidence to allow the jury to hear the
testimony of Shirley and Larry did not affect appellant's substantial rights. See Tex. R.
App. 44.2(b); see also Kennerson, 984 S.W.2d 707 (Violations of art. 36.02 are governed
by Rule 44.2(b)). As noted herein, the theme of the proffered testimony was the doubt
expressed by Shirley and Larry that Decluitt committed the offense. However, the record
of the case-in-chief contains considerable evidence from various witnesses who testified
regarding the complainant's lack of veracity, including testimony from Larry and the
testimony quoted above from Shirley. Any error in excluding this additional testimony,
on the same issue about which considerable evidence had already been presented, was
harmless.

 We overrule appellant's issue. See King v. State, 953 S.W.2d 266, 271 (Tex.
Crim. App. 1997) (citing Kotteakos v. United States, 328 U.S. 750, 776, 66 S.Ct. 1239,
90 L.Ed.1946)). The judgment is affirmed. 

 AFFIRMED.

 PER CURIAM



Submitted on August 22, 2002

Opinion Delivered August 28, 2002

Do Not Publish 


Before Walker, C.J., Burgess, and Gaultney, JJ.