IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. 1647-02






BILLY EUGENE COLLIER, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FOURTEENTH COURT OF APPEALS


HARRIS COUNTY






 Holcomb, J., filed a dissenting opinion, in which Meyers, Price, and Cochran, JJ.,
joined.



OPINION




 I respectfully dissent. After reviewing the record, I disagree with the majority's conclusion that the
trial court's error did not affect appellant's substantial rights.

The Relevant Facts


 A Harris County grand jury indicted appellant for aggravated assault with a deadly weapon. See
Tex. Pen. Code § 22.02(a)(2). At trial, the State offered the testimony of three witnesses in an attempt
to prove its case. The first witness, Calvin Washington, testified that shortly after 6:00 p.m. on June 21,
1999, at the intersection of Alvin and Coffee Streets in Houston, he had a brief "conversation" with
appellant regarding appellant's behavior toward Washington's girlfriend. Washington testified further that
once the conversation ended, appellant "all of a sudden" produced a handgun and shot at him several
times, hitting him twice. The second witness, Kendra Williams, testified that at the time and place in
question, appellant shot at Washington several times without warning and without provocation. The third
witness, Rodney Williams, testified that appellant argued with, and then shot at, Washington.

 Appellant, in an effort to prove that he acted in self-defense, (1) offered the testimony of four
witnesses, including himself. Their testimony concerning the events surrounding the shooting differed
markedly from that of the State's witnesses. The first defense witness, Brady Anderson, testified that just
before the shooting, Washington threatened appellant and warned him that he (i.e., Washington) was
carrying a gun. The second defense witness, William Simon, testified that Washington threatened appellant
and charged at him. The third witness, Renee Cooper, testified that Washington threatened appellant twice
and "reached down ... to his side" just before appellant shot him. Finally, appellant himself testified that
just before the shooting, Washington was visibly angry and threatened to shoot him and his grandmother, (2)
that Washington was armed with a handgun, that he feared for his life because of Washington's actions,
and that he shot Washington only when Washington "started reaching for his [gun]."

 The trial court, in response to the State's hearsay objection, did not allow Anderson, Simon, and
Cooper to testify about the specifics of Washington's alleged threats against appellant. Had they been
allowed to testify, Anderson and Cooper would have corroborated appellant's claim that just before the
shooting, Washington threatened to shoot appellant and his grandmother, and Simon would have testified
that Washington threatened "to wipe out the corner."

 The jury rejected appellant's defense, found him guilty as charged, and assessed his punishment,
enhanced by a prior felony conviction, at imprisonment for eighteen years and a fine of $8,000.

 On direct appeal, appellant argued that the trial court erred in, among other things, not allowing
Anderson, Simon, and Cooper to testify concerning the specifics of Washington's alleged threats against
appellant. "The testimony of the threats to kill made by Calvin Washington," appellant argued, "were
directly relevant to show the reasonableness of appellant's belief that Washington was about to use unlawful
deadly force." Appellant also argued that the trial court's error was not harmless:

 The precise threats made by [Washington] were a vital component for the jury's
consideration of the reasonableness of appellant's actions and to prove that Washington
was the aggressor. [The jurors] were only allowed to hear that "threats were made." A
threat may be anything from a threat to do something totally nonviolent all the way up to
threats to kill.... Although appellant was allowed to testify that he saw Washington reach
for a gun, he was also impeached with prior felony convictions and a prior assault.


 The Fourteenth Court of Appeals agreed with appellant that the trial court erred in excluding the
testimony in question, but the court also held that the error was harmless under Texas Rule of Appellate
Procedure 44.2(b). "After examining the record as a whole, we have fair assurance exclusion of the
specific nature of the threats did not influence the jury or had only a slight effect." Collier v. State, No. 14-00-00609-CR (Tex.App.-Houston [14th Dist.], Aug. 8, 2002) (unpub.), slip op. at 10. Justice Hudson
dissented, arguing that the trial court's error was not harmless:

 [A]ppellant's defensive theory was self-defense. While appellant was permitted to testify
that he believed he was justified in shooting Washington to save his own life, the
effectiveness of his defense was seriously eroded by the exclusion of testimony from
bystanders who would have allegedly corroborated Washington's offensive and aggressive
demeanor and who heard him make numerous threats to kill appellant moments before the
shooting.


Collier v. State, No. 14-00-00609-CR (Hudson, J., dissenting), slip op. at 2.

 We granted appellant's petition for discretionary review to determine whether the court of appeals
erred in its harmless error analysis. See Tex. R. App. Proc. 66.3(e).

Analysis


 Texas Rule of Appellate Procedure 44.2(b) provides that an appellate court must disregard a non-constitutional error that does not affect a criminal defendant's "substantial rights." Under that rule, an
appellate court may not overturn a conviction for non-constitutional error if the appellate court, after
examining the record as a whole, has fair assurance that the error did not have a substantial and injurious
effect or influence in determining the jury's verdict. Johnson v. State, 967 S.W.2d 410, 417
(Tex.Crim.App. 1998); King v. State, 953 S.W.2d 266, 271 (Tex.Crim.App. 1997). (3)

 After reviewing the record in this case, I do not have fair assurance that the trial court's error did
not have a substantial and injurious effect or influence in determining the jury's verdict at the guilt/innocence
phase. In order to prevail at the guilt/innocence phase, appellant had to persuade the jury that, at the time
of the shooting, he reasonably believed that his use of deadly force was immediately necessary to protect
himself and his grandmother from Washington's use of unlawful deadly force. Although appellant was
permitted to testify that Washington was armed and belligerent and that Washington threatened to use
deadly force against him and his grandmother, the effectiveness of appellant's testimony was, in the words
of Justice Hudson, "seriously eroded by the exclusion of testimony from [three] bystanders who would have
... corroborated Washington's offensive and aggressive demeanor and who heard him make ... threats to
kill appellant moments before the shooting." If the jury had heard the excluded testimony, it could have
concluded that appellant's self-defense claim was valid. 

 I also do not have fair assurance that the trial court's error did not have a substantial and injurious
effect or influence in determining the jury's verdict at the punishment phase. Given what the jury was
allowed to hear, the jury could have concluded that, at the time of the shooting, appellant did not reasonably
believe that Washington actually represented a deadly threat to appellant. But, if the jury had heard the
excluded testimony, it could have concluded that the truth lay somewhere between appellant's version and
the State's version and could have given appellant the benefit of any residual doubt by assessing a lighter
sentence.

 I respectfully dissent. I would reverse the judgment of the court of appeals and remand the case
to the trial court for a new trial.


DELIVERED NOVEMBER 5, 2003

DO NOT PUBLISH
1. Appellant's defense relied upon Texas Penal Code § 9.32(a), which provides, in relevant
part, that a person is justified in using deadly force against another if the person reasonably believes the
deadly force used is immediately necessary to protect himself against the other's use or attempted use
of unlawful deadly force.
2. Evidence at trial established that appellant and his grandmother lived together in a home at the
corner of Alvin and Coffee Streets.
3. Our holdings in Johnson and King sprang from Kotteakos v. United States, 328 U.S. 750,
764-765 (1946), in which the United States Supreme Court expounded upon the meaning of the
federal "substantial rights" harmless error test:


 If, when all is said and done, the conviction is sure that the error did not
influence the jury, or had but very slight effect, the verdict and the judgment should
stand.... But if one cannot say, with fair assurance, after pondering all that happened
without stripping the erroneous action from the whole, that the judgment was not
substantially swayed by the error, it is impossible to conclude that substantial rights
were not affected.