NO. 12-03-00121-CR
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
ANTWANN JOHNSON,                                    §                 APPEAL FROM THE 114TH
APPELLANT
 
V.                                                                         §                 JUDICIAL DISTRICT COURT OF

THE STATE OF TEXAS,
APPELLEE                                                        §                 SMITH COUNTY, TEXAS
                                                                                                                                                            
MEMORANDUM OPINION
            Antwann Johnson appeals his conviction for aggravated robbery, for which he was sentenced
to imprisonment for twenty years and fined five hundred dollars. Appellant raises four issues on
appeal. We reverse and remand.
 
Background
            Appellant was indicted for aggravated robbery. In accordance with the trial court’s “timely
pass for plea” procedure, Appellant initially pleaded “guilty” and signed a sworn stipulation of
evidence. The trial court assessed Appellant’s punishment, and Appellant, in accordance with the
court’s policy, withdrew his guilty plea and requested a jury trial.
            At trial, the victim, Marcia Wintters, testified that on November 16, 2002 she had gone
shopping with her daughter. Wintters testified that at sometime between 4:30 p.m. and 5:00 p.m.,
her daughter drove her back to the used car dealership where Wintters worked. When the two
arrived at the dealership, Appellant and another man were outside the dealership in the parking lot. 
Wintters recognized Appellant as the same person who had previously purchased a car from the
dealership, but who had later returned the car citing mechanical problems. Wintters’s daughter
inquired if everything was alright. When Wintters responded affirmatively, her daughter drove
away, leaving Wintters in the parking lot with Appellant and the other man, whom Wintters later
identified as Chad Lampton.



            Appellant told Wintters, who had been selling jewelry at the used car dealership, that he
could get her a good deal on some diamonds if she wanted to make some money. Wintters told
Appellant that she might be interested and got into the car with Lampton and Appellant. The three
drove to a nearby residence purportedly to pick up the diamonds. When they arrived, Lampton, who
was driving, exited the car and walked to the back of the house. Appellant remained in the car with
Wintters. Wintters testified that when Lampton returned, he was carrying what she believed to be
a black box containing jewelry, which he placed in the trunk. The three then drove back to the used
car dealership. According to Wintters, the excursion lasted no more than fifteen minutes.
            Upon arriving at the used car dealership, Appellant exited the vehicle and retrieved from the
trunk what Wintters believed to be the box of jewelry. Yet when Appellant returned, according to
Wintters, he had a rifle. Wintters testified that Lampton told Appellant to “give it to [her],” at which
time Appellant pointed the .22 caliber rifle with an octagonal-shaped barrel at Wintters, held it close
to her face, and said, “Give me all your money, bitch. Give it all to me. Give me everything you got. 
Now. Give it all to me. Give me all your money . . . , bitch. You whore.” Wintters complied with
the men’s demands and gave them approximately four hundred fifty to five hundred fifty dollars.


 
            Wintters testified that while Appellant and Lampton counted the money she was able to
unlock the rear door of the car and exit the vehicle. Wintters testified that she jumped in her own
car and drove away to her house. Subsequently, she and her boyfriend returned to the used car
dealership where they contacted the police.
            Later that evening, police apprehended Appellant and Lampton at a nearby motel. At the
motel, Officer Robert Callaway testified that he removed cash from Appellant’s pockets, including
a one dollar bill, a five dollar bill, and a one hundred dollar bill. Police also discovered marijuana
in the toilet of the hotel room.
            Quinton Green testified as an alibi witness on Appellant’s behalf. Green stated that he had
known Appellant all of his life and that he had known Lampton for about three years. Green, who
is a barber, testified that Appellant and Lampton arrived at the barbershop where Green works at
4:00 p.m. on November 16, 2002. According to Green, Lampton entered the barbershop and waited
behind thirteen other people for Green to cut his hair. Green further testified that Appellant departed
in the car in which the two men had arrived, but returned at 5:00 p.m., 6:00 p.m., 7:00 p.m., and 7:30
p.m. Green stated that at 7:30 p.m., he told Appellant to come inside and that Appellant entered the
barbershop accompanied by two women. Green testified that Appellant, Lampton, and the two
women left in Lampton’s car at 8:00 p.m. When cross-examined by the prosecuting attorney, Green
stated that he was not aware that Appellant had signed a sworn stipulation of evidence.



            Tequeta Crockett also testified as an alibi witness on Appellant’s behalf. Crockett testified
that she had known Appellant for six years. Crockett further testified that Appellant and Lampton
picked her up in Lampton’s car at 3:00 p.m. on November 16, 2002 and that Appellant drove to the
barbershop to drop Lampton off to get his hair cut. Crockett testified that she and Appellant then
drove to pick up her cousin, Charlene. Crockett further testified that she, Appellant, and her cousin
drove around for a while before going back to the barber shop to pick up Lampton. However,
according to Crockett, Lampton was not finished, and the three waited in the car until the barber
invited them inside. Once Lampton had gotten his hair cut, according to Crockett, the four drove
to her house. Crockett testified that she was in Appellant’s company the entire time from around
3:00 p.m. until some time after 7:00 p.m. When cross-examined by the prosecuting attorney,
Crockett testified that she was not aware until the day of her testimony that Appellant had signed a
sworn stipulation of evidence in which he admitted committing the offense of aggravated robbery.
            Ultimately, the jury found Appellant guilty as charged and assessed his punishment at
imprisonment for twenty years and a five hundred dollar fine. The trial court sentenced Appellant
accordingly, and this appeal followed.
 
Introducing a Stipulation of Evidence
from a “Timely Pass for Plea” Proceeding

            In his first issue, Appellant argues that the trial court erred when it introduced the stipulation
of evidence he signed in conjunction with his guilty plea in accordance with the trial court’s “timely
pass for plea” procedure. In Bowie v. State, 135 S.W.3d 55, 65-66 (Tex. Crim. App. 2004), the court
of criminal appeals reversed the decision of this court, on which the trial court based its ruling
admitting Appellant’s stipulation of evidence. Specifically, the court held that all statements that
a defendant makes during a “timely pass for plea” proceeding are inadmissible against the defendant
in a subsequent trial pursuant to Texas Rule of Evidence 410(3). Id. Therefore, the admission of
Appellant’s stipulation of evidence was erroneous. 
            However, the question remains whether such error was harmful to Appellant. Any non-constitutional error that does not affect substantial rights must be disregarded. See Tex. R. App. P.
44.2(b). A substantial right is affected when the error has a substantial and injurious effect or
influence in determining the jury’s verdict. See King v. State, 953 S.W.2d 266, 271 (Tex. Crim.
App. 1997). When we assess harm under Rule 44.2(b), we review the entire record to determine
whether the error had more than a slight influence on the verdict. See Fowler v. State, 958 S.W.2d
853, 866 (Tex. App.–Waco 1997), aff’d, 991 S.W.2d 258 (Tex. Crim. App. 1999).


 If we find that
it did, we must conclude that the error affected the defendant's rights in such a way as to require a
new trial. See Fowler, 958 S.W.2d at 866. If we have grave doubts about its effect on the outcome,
we should find that the error was such as to require a new trial. Id.
            We first consider the nature of the evidence supporting the verdict. In addition to Appellant’s
stipulation of evidence, the direct evidence supporting the verdict consisted primarily of Wintters’s
testimony that Appellant held her at gunpoint in the back seat of his car, demanded money from her,
and appropriated approximately six hundred fifty dollars from her. No other eyewitness testimony
was recorded. Other evidence, such as testimony provided by arresting and investigating officers,
among others, while not inconsequential, was primarily of the corroborative and circumstantial
variety. On the other hand, although Appellant did not testify, an alibi defensive theory was clearly
conveyed through the testimony of both Green and Crockett. Furthermore, an alibi defense was set
forth in the court’s charge. The State used Appellant’s stipulation of evidence in its cross-examination of both Green and Crockett in order to challenge the veracity of their respective
testimonies. The State made continuing references to Appellant’s stipulation of evidence in its jury
argument. In rebuttal to Appellant’s jury argument, the prosecuting attorney argued to the jury as
follows:
 
I’m questioning their veracity based on their relationship with this Defendant, based on the fact that
they never once came forward until today, until his trial, never once. And when this Defendant is
entering his guilty plea and swearing that he committed this crime and held that rifle to Ms. Wintters,
when he’s doing that in this courtroom, in front of this judge, raising his right hand and swearing to
this, where are they?

              Where are they?
 
And why, if this is such an unbelievable case, if this is such an unbelievable victim, and she’s just
chock full of lies, and this is just a shoddy, 30-minute police investigation . . . , why is he doing that?
 
Why is he getting up here and swearing to God that he’s guilty of this offense that he did, if this is such
a horrible case?
 
And if he’s got an alibi, if he has an alibi, if he’s got witnesses, and he knows he’s got witnesses who
can put him away from the scene of this crime, why is he doing this, if he really has them?
 
And why, if he really has them at the time he’s entering this plea, do they not show up anywhere until
now when he’s withdrawn his plea and decided to go to a jury trial? Why now do they show up rather
than then?
 
Because they didn’t exist at this point. They were fabricated, and that’s why I say that they’re not
telling the truth up here.
 
              ....
 
The reason this Defendant is guilty is not solely and exclusively because he swore that he was, and
voluntarily signed this sworn stipulation, and voluntarily gave this to the Court and said “I’m guilty
of ths offense.” He’s not guilty just because of this. And he’s not guilty just because of what Marcia
Wintters says.
 
He is not guilty only because of everything she testified to, just about, is corroborated. He’s guilty
based on all of that.
 
You should not believe the alibi witnesses, not just [because] they are not police officers or doctors
or whatever. It has nothing to do with that. You shouldn’t believe them because they have a
relationship with the Defendant, and they came forward today for the first time, today. Not on March
10th or whenever the date is on this. Not when he was swearing that he was guilty of this offense. 
 
You know what? If he has a defense, a good defense like an alibi, why is he worried about going to
trial?
 
Why is he even going to plead guilty to something like that, to a first-degree felony, to an aggravated
robbery where he says in his sworn statement, “I held a gun to this lady’s face,” if he’s got a defense,
if it was a righteous defense, and if they were telling you the truth?


In his final words to the jury, the prosecuting attorney argued, “And why would this Defendant swear
that he was guilty, having these alibi witnesses in his back pocket.”
            Since witness credibility and the viability of Appellant’s defensive theory were at issue, the
prior, in-court, and sworn testimony of Appellant, elicited while represented by counsel, provided
the State its strongest evidence at trial. See, e.g., Bowie, 2003 WL 568905, at *2. The importance
of Appellant’s testimony, both in bolstering Wintters’s testimony and discrediting the testimony of
Green and Crockett, was magnified by the prosecuting attorney’s rebuttal argument to the jury as set
forth above. Given the record before us, we have no fair assurance that the error did not influence
the jury or had but a slight effect. Id. Appellant’s first issue is sustained.



 
Conclusion
            Having sustained Appellant’s first issue, we reverse the trial court’s judgment and remand
the cause for a new trial consistent with this opinion.
 
                                                                                                    SAM GRIFFITH 
                                                                                                               Justice
 
 
Opinion delivered November 24, 2004.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.





(DO NOT PUBLISH)