

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-07-382-CR

JOSEPH LOUIS SVITAK                                              APPELLANT

V.

THE STATE OF TEXAS                                                  STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

Joseph Louis Svitak appeals from his conviction for two counts of indecency with a child. In one point, he argues that the trial court erred by excluding evidence that he contends shows animosity between him and the complainant's family. We affirm.

---

[1] *See* Tex. R. App. P. 47.4.

**Background**

Because Appellant does not contest the legal or factual sufficiency of the evidence, we will relate only as much of the record as necessary to put his complaint into context.

A grand jury indicted Appellant on six counts of indecency with a child by contact and three counts of aggravated sexual assault of a child. The complainant, "Lucy" (a pseudonym), who was fifteen years old at the time of trial, testified that Appellant and his wife, Cyndi, lived across the street and two houses down from the home where Lucy lived with her mother, Brandy, her two sisters, and her brother. She said that on various occasions, Appellant touched her breasts outside and inside her clothing, kissed her breasts, touched her female sexual organ outside and inside her clothing, penetrated her female sexual organ with his finger and his tongue, and put his penis in her mouth. On cross-examination, she testified that between 2002 and 2004, her family had a number of contacts with "the authorities" and that she and her family

believed that Appellant and Cyndi had caused some of those contacts.[2] She said that belief caused some hard feelings between the two families. She also admitted that she told Cyndi that "nothing happened" between her and Appellant.

Lucy's older sister, "Karen" (a pseudonym), who was sixteen years old at the time of trial, testified that she was present on several occasions when Appellant asked Lucy to expose her breasts to him, on one occasion when he touched Lucy's breast, and on one occasion when he penetrated Lucy's female sexual organ with his finger. She said that Appellant told her and Lucy that if they ever called the police, he would report them to CPS and tell the police that their mother was dealing drugs out of the family home.

Cyndi and Appellant testified for the defense. Outside the presence of the jury, Cyndi testified that she had reported Lucy's family to CPS in 2003 after she saw Brandy punching Lucy in the stomach. On another occasion, she called the police because "the girls were running the streets" at two o'clock in

---

[2] The State, in both its statement of facts and its argument, asserts that Lucy gave much more extensive testimony about her family's run-ins with Child Protective Services ("CPS") and the police, including testimony that CPS and the police went to their house frequently in 2002 through 2004. But Lucy gave the testimony cited by the State on voir dire outside the presence of the jury, the trial court sustained the State's objections to the testimony, and—when the jury returned to the courtroom—Lucy's testimony on the topic was limited to her statement about contact with the "authorities."

the morning. Another time, she wrote a letter to CPS because Karen told her and Appellant that Brandy's boyfriend was molesting Lucy and because Karen and Lucy's cousin told her that Brandy was using drugs. Cyndi said that in 2004, someone reported to the police that Lucy's little brother was riding his tricycle in a busy intersection. The police found the boy at home alone, and they told Cyndi that they were reporting Brandy to CPS because her home was filthy. She said that on another occasion, Karen and Lucy's grandmother called Cyndi and asked her to pick up Karen from school because Brandy was not answering her phone. She testified that Appellant saw Brandy's car in the driveway of Brandy's house and that she and Appellant walked over to confront Brandy. Cyndi said that Appellant told Brandy, "We're tired of being your free taxi service, your free baby-sitter and your free grocery store. You need to pick up your own kids and maybe if you lay off the crack, . . . maybe you could hear the phone ring." Cyndi said Brandy replied, "Fuck you," and slammed the door. Cyndi testified that after Lucy made allegations against Appellant, she told Lucy and Karen to stop coming to her house, but the girls continued to come over anyway. She said that on one such occasion—ten days after Lucy made her outcry statement—she and Appellant had just returned from her brother's funeral in Austin when Karen ran up to them and asked where they had been

4

"all dressed up." Appellant told her to go home. Karen asked for a Dr. Pepper, and Appellant again told her to go home; Karen said, "bitch," and walked away.

The trial court ruled that Cyndi could testify about the latter incident in detail and could testify that Brandy had slammed the door in Appellant's face, but it sustained the State's objections to Cyndi's testimony about the other incidents. Before the jury, Cyndi testified in accordance with the trial court's rulings.

Appellant likewise testified that he had an argument with Brandy and that Brandy slammed the door in his face, that there were other arguments between the families, and that Karen called him "bitch" when he refused to give her a Dr. Pepper. He denied any inappropriate behavior toward Lucy or Karen.

The jury found Appellant guilty on two counts of indecency by contact, and the trial court declared a mistrial on the other counts. The jury assessed punishment at twenty years' confinement and a $10,000 fine on each count, and the trial court sentenced Appellant accordingly, with the terms of confinement to run concurrently.

**Discussion**

In his sole point, Appellant argues that the trial court erred by excluding most of Cyndi's and Lucy's testimony about the nature and cause of the animosity between Appellant and Lucy's family. He contends that the key

5

issue at trial was Lucy's and Karen's credibility and that the exclusion of the evidence in question—which he suggests shows a "reason for a druggie mother to get her kids to lie"—precluded him from presenting his only defense.

We review a trial court's evidentiary rulings under an abuse of discretion standard. *See Montgomery v. State,* 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Walters v. State*, 247 S.W.3d 204, 217 (Tex. Crim. App. 2007). Even if erroneous, the trial court's exclusion of evidence offered by the accused generally does not rise to the level of constitutional error unless the offered evidence "forms the vital core of a defendant's theory of defense and effectively prevents him from presenting that defense." *Id*. at 219 (citing *Wiley v. State*, 74 S.W.3d 399, 406–07 (Tex. Crim. App. 2002)); *Potier v. State*, 68 S.W.3d 657, 665 (Tex. Crim. App. 2002) (en banc).

A defendant has a fundamental right to present evidence of a defense as long as the evidence is relevant and is not excluded by an established evidentiary rule. *Miller v. State*, 36 S.W.3d 503, 507 (Tex. Crim. App. 2001) (citing *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S. Ct. 1038, 1049

(1973)).  We will, therefore, review the excluded evidence to determine if it was properly excluded under an established rule of evidence.[3]

With regard to Lucy's excluded testimony regarding encounters with CPS and the police, the State asserted hearsay, relevance, and collateral-impeachment objections.  Although the trial court's precise ruling on those objections is unclear, the trial court limited Lucy's testimony to saying that her family had "contact with the authorities" that caused bad feelings between the families, thus implicitly sustaining the objections at least in part.  *See* Tex. R. App. P. 33.1(a)(2) (recognizing implicit rulings).

The specific testimony that Appellant elicited from Lucy on voir dire and that the trial court excluded from admission into evidence was (1) that the "authorities" she ultimately testified about were CPS and the police and (2) the reasons why CPS and the police were involved with the family, namely, because of complaints that the children were "running around outside unsupervised" and because their house was "extremely untidy."

Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.  Tex. R. Evid. 401.

---

[3] Both parties' briefs conflate the error analysis with the harm analysis. We will focus our attention on the error analysis first.

Appellant argues that the excluded testimony was relevant to show the basis of the animus between him and Lucy's family and, by extension, to show Lucy's motive to fabricate her allegations of abuse. The trial court did allow Appellant to prove up that animus by asking Lucy about "contacts" with the "authorities" and how those contacts led to "hard feelings" between the families because Lucy's family thought Appellant and Cyndi were reporting them to the authorities. The actual identity of the "authorities" and the reasons underlying their contact with Lucy's family do not make the "hard feelings" between the families and Lucy's motive to lie any more or less probable than the testimony that the trial court did allow him to elicit from Lucy; the important fact of consequence to the determination of the action was the animus between the families and its general source, not the underlying details. We therefore hold that the trial court did not err by implicitly sustaining the State's relevance objection to Lucy's excluded testimony. *See* Tex. R. Evid. 401.

With regard to Cyndi's excluded testimony, the State again objected on the basis of relevance and hearsay. The trial court excluded Cyndi's testimony concerning reports she made to CPS when she saw Brandy punching Lucy in the stomach and when Karen told her that Brandy's boyfriend was molesting Lucy, stating, "I still don't understand how it's relevant that CPS reports were made if there's not been a showing that anybody knew that [Cyndi] was the

8

source of the CPS report." We agree with the trial court and hold that the trial court did not abuse its discretion by sustaining the State's relevance objections to Cyndi's testimony about reports she made to CPS.

The trial court also limited Cyndi's testimony concerning the incident when Cyndi and Appellant told Brandy to pick up her children from school and to stop smoking crack. The court allowed Cyndi to testify about to what Brandy did—slammed the door in their faces—but excluded as hearsay Cyndi's testimony with regard to what she, Appellant, and Brandy said.

Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted. Tex. R. Evid. 801(d). "Matter asserted" includes any matter explicitly asserted if the probative value of the statement as offered flows from the declarant's belief as to the matter. Tex. R. Evid. 801(c).

There are three discrete parts to Cyndi's testimony regarding this event. First is her testimony that Lucy and Karen's grandmother called her and asked her to pick up the children at school because she could not reach Brandy by phone. Second is her testimony about what Appellant said to Brandy—that he was tired of serving as her free taxi and that she might hear the phone ring if she stopped smoking crack. Third is what Brandy said to Appellant and Cyndi—"Fuck you."

The grandmother's statement is hearsay because it was offered at least in part to prove the truth of the matter asserted, namely, that Brandy would not answer the phone. Appellant's statement to Brandy is likewise hearsay because it was offered to prove Appellant's belief that she did not answer the phone because she was smoking crack. Thus, the trial court did not abuse its discretion by excluding those two statements as hearsay.

Brandy's statement to Appellant and Cyndi, on the other hand, was a crude exclamation or insult that did not "assert" any "matter." Therefore, it was not hearsay, and the trial court erred by excluding it as such. But the trial court did allow Cyndi and Appellant to testify that Brandy slammed the door in their faces. Thus, we cannot say that the trial court's erroneous exclusion of Brandy's expletive effectively prevented Appellant from presenting his defense, and the exclusion of the statement does not rise to the level of constitutional error. *See Walters*, 247 S.W.3d at 217.

Because the error is not constitutional, rule 44.2(b) applies. Tex. R. App. P. 44.2(b). Under that rule, we must disregard the error if it did not affect Appellant's substantial rights. *Id.*; *see Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999); *Coggeshall v. State*, 961 S.W.2d 639, 642–43 (Tex. App.—Fort Worth 1998, pet. ref'd). A substantial right is affected when the error had a substantial and

10

injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); *Coggeshall*, 961 S.W.2d at 643. Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

Under the circumstances, we have fair assurance that the exclusion of Brandy's utterance did not influence the jury or had but a slight effect. Considering Lucy's and Karen's testimony against Appellant and that Appellant was allowed to offer testimony about animosity between the two families (albeit not to the extent or in the manner he desired), including testimony that Brandy slammed the door in his and Cyndi's faces immediately after uttering the excluded profanity, the utterance itself is trivial, and we cannot see how its admission into evidence, if the trial court had admitted it, would have influenced the jury or had more than a slight effect. We therefore hold that the trial court's error in excluding the utterance was harmless, and we disregard the error. *See* Tex. R. App. P. 44.2(b).

**Conclusion**

11

We overrule Appellant's sole point, and we affirm the trial court's judgment.

ANNE GARDNER
JUSTICE

PANEL:  CAYCE, C.J.; LIVINGSTON and GARDNER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  February 5, 2009