COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.  2-07-382-CR

 

 

JOSEPH LOUIS SVITAK                                                        APPELLANT

 

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM CRIMINAL DISTRICT
COURT NO. 3 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

Joseph Louis Svitak appeals from his conviction
for two counts of indecency with a child. 
In one point, he argues that the trial court erred by excluding evidence
that he contends shows animosity between him and the complainant=s
family.  We affirm.








                                            Background

Because Appellant does not contest the legal or
factual sufficiency of the evidence, we will relate only as much of the record
as necessary to put his complaint into context.








A grand jury indicted Appellant on six counts of
indecency with a child by contact and three counts of aggravated sexual assault
of a child.  The complainant, ALucy@ (a
pseudonym), who was fifteen years old at the time of trial, testified that Appellant
and his wife, Cyndi, lived across the street and two houses down from the home
where Lucy lived with her mother, Brandy, her two sisters, and her
brother.  She said that on various
occasions, Appellant touched her breasts outside and inside her clothing,
kissed her breasts, touched her female sexual organ outside and inside her
clothing, penetrated her female sexual organ with his finger and his tongue,
and put his penis in her mouth.  On
cross-examination, she testified that between 2002 and 2004, her family had a
number of contacts with Athe authorities@ and
that she and her family believed that Appellant and Cyndi had caused some of
those contacts.[2]  She said that belief caused some hard
feelings between the two families.  She
also admitted that she told Cyndi that Anothing
happened@ between
her and Appellant.

Lucy=s older
sister, AKaren@ (a
pseudonym), who was sixteen years old at the time of trial, testified that she
was present on several occasions when Appellant asked Lucy to expose her
breasts to him, on one occasion when he touched Lucy=s
breast, and on one occasion when he penetrated Lucy=s female
sexual organ with his finger.  She said
that Appellant told her and Lucy that if they ever called the police, he would
report them to CPS and tell the police that their mother was dealing drugs out
of the family home.













Cyndi and Appellant testified for the
defense.  Outside the presence of the
jury, Cyndi testified that she had reported Lucy=s family
to CPS in 2003 after she saw Brandy punching Lucy in the stomach.  On another occasion, she called the police
because Athe
girls were running the streets@ at two
o=clock in
the morning.  Another time, she wrote a
letter to CPS because Karen told her and Appellant that Brandy=s
boyfriend was molesting Lucy and because Karen and Lucy=s cousin
told her that Brandy was using drugs. 
Cyndi said that in 2004, someone reported to the police that Lucy=s little
brother was riding his tricycle in a busy intersection.  The police found the boy at home alone, and
they told Cyndi that they were reporting Brandy to CPS because her home was
filthy.  She said that on another
occasion, Karen and Lucy=s grandmother called Cyndi and
asked her to pick up Karen from school because Brandy was not answering her
phone.  She testified that Appellant saw
Brandy=s car in
the driveway of Brandy=s house and that she and
Appellant walked over to confront Brandy. 
Cyndi said that Appellant told Brandy, AWe=re tired
of being your free taxi service, your free baby-sitter and your free grocery
store.  You need to pick up your own kids
and maybe if you lay off the crack, . . . maybe you could hear the phone ring.@  Cyndi said Brandy replied, AFuck
you,@ and
slammed the door.  Cyndi testified that
after Lucy made allegations against Appellant, she told Lucy and Karen to stop
coming to her house, but the girls continued to come over anyway.  She said that on one such occasionCten days
after Lucy made her outcry statementCshe and
Appellant had just returned from her brother=s
funeral in Austin when Karen ran up to them and asked where they had been Aall
dressed up.@ 
Appellant told her to go home. Karen asked for a Dr. Pepper, and
Appellant again told her to go home; Karen said, Abitch,@ and
walked away.

The trial court ruled that Cyndi could testify
about the latter incident in detail and could testify that Brandy had slammed
the door in Appellant=s face, but it sustained the
State=s
objections to Cyndi=s testimony about the other
incidents.  Before the jury, Cyndi
testified in accordance with the trial court=s
rulings.

Appellant likewise testified that he had an
argument with Brandy and that Brandy slammed the door in his face, that there
were other arguments between the families, and that Karen called him Abitch@ when he
refused to give her a Dr. Pepper.  He
denied any inappropriate behavior toward Lucy or Karen.

The jury found Appellant guilty on two counts of
indecency by contact, and the trial court declared a mistrial on the other
counts.  The jury assessed punishment at
twenty years= confinement and a $10,000 fine
on each count, and the trial court sentenced Appellant accordingly, with the
terms of confinement to run concurrently.

                                             Discussion








In his sole point, Appellant argues that the
trial court erred by excluding most of Cyndi=s and
Lucy=s
testimony about the nature and cause of the animosity between Appellant and
Lucy=s
family.  He contends that the key issue
at trial was Lucy=s and Karen=s
credibility and that the exclusion of the evidence in questionCwhich he
suggests shows a Areason for a druggie mother to
get her kids to lie@Cprecluded
him from presenting his only defense.

We review a trial court=s
evidentiary rulings under an abuse of discretion standard.  See Montgomery v. State, 810 S.W.2d
372, 391 (Tex. Crim. App. 1991) (op. on reh=g).  A trial court abuses its discretion when its
decision lies outside the zone of reasonable disagreement.  Walters v. State, 247 S.W.3d 204, 217
(Tex. Crim. App. 2007).  Even if
erroneous, the trial court=s
exclusion of evidence offered by the accused generally does not rise to the
level of constitutional error unless the offered evidence Aforms
the vital core of a defendant=s theory
of defense and effectively prevents him from presenting that defense.@ Id.
at 219 (citing Wiley v. State, 74 S.W.3d 399, 406B07 (Tex.
Crim. App. 2002)); Potier v. State, 68 S.W.3d 657, 665 (Tex. Crim. App.
2002) (en banc).








A defendant has a fundamental right to present
evidence of a defense as long as the evidence is relevant and is not excluded
by an established evidentiary rule.  Miller
v. State, 36 S.W.3d 503, 507 (Tex. Crim. App. 2001) (citing Chambers v.
Mississippi, 410 U.S. 284, 302, 93 S. Ct. 1038, 1049 (1973)).  We will, therefore, review the excluded
evidence to determine if it was properly excluded under an established rule of
evidence.[3]

With regard to Lucy=s
excluded testimony regarding encounters with CPS and the police, the State
asserted hearsay, relevance, and collateral-impeachment objections.  Although the trial court=s
precise ruling on those objections is unclear, the trial court limited Lucy=s
testimony to saying that her family had Acontact
with the authorities@ that caused bad feelings
between the families, thus implicitly sustaining the objections at least in
part.  See Tex. R. App. P.
33.1(a)(2) (recognizing implicit rulings).

The specific testimony that Appellant elicited
from Lucy on voir dire and that the trial court excluded from admission into
evidence was (1) that the Aauthorities@ she
ultimately testified about were CPS and the police and (2) the reasons why CPS
and the police were involved with the family, namely, because of complaints
that the children were Arunning around outside
unsupervised@ and because their house was Aextremely
untidy.@








Evidence is relevant if it has any tendency to
make the existence of any fact that is of consequence to the determination of
the action more probable or less probable than it would be without the
evidence.  Tex. R. Evid. 401.  Appellant argues that the excluded testimony
was relevant to show the basis of the animus between him and Lucy=s family
and, by extension, to show Lucy=s motive
to fabricate her allegations of abuse. 
The trial court did allow Appellant to prove up that animus by asking
Lucy about Acontacts@ with
the Aauthorities@ and how
those contacts led to Ahard feelings@ between
the families because Lucy=s family thought Appellant and
Cyndi were reporting them to the authorities. 
The actual identity of the Aauthorities@ and the
reasons underlying their contact with Lucy=s family
do not make the Ahard feelings@ between
the families and Lucy=s motive to lie any more or less
probable than the testimony that the trial court did allow him to elicit from
Lucy; the important fact of consequence to the determination of the action was
the animus between the families and its general source, not the underlying
details.  We therefore hold that the
trial court did not err by implicitly sustaining the State=s
relevance objection to Lucy=s
excluded testimony.  See Tex. R.
Evid. 401.








With regard to Cyndi=s
excluded testimony, the State again objected on the basis of relevance and
hearsay.  The trial court excluded Cyndi=s
testimony concerning reports she made to CPS when she saw Brandy punching Lucy
in the stomach and when Karen told her that Brandy=s
boyfriend was molesting Lucy, stating, AI still
don=t
understand how it=s relevant that CPS reports were
made if there=s not been a showing that
anybody knew that [Cyndi] was the source of the CPS report.@  We agree with the trial court and hold that
the trial court did not abuse its discretion by sustaining the State=s
relevance objections to Cyndi=s
testimony about reports she made to CPS.

The trial court also limited Cyndi=s
testimony concerning the incident when Cyndi and Appellant told Brandy to pick
up her children from school and to stop smoking crack.  The court allowed Cyndi to testify about to
what Brandy didCslammed the door in their facesCbut
excluded as hearsay Cyndi=s testimony with regard to what
she, Appellant, and Brandy said.

Hearsay is an out-of-court statement offered in
evidence to prove the truth of the matter asserted.  Tex. R. Evid. 801(d).  AMatter
asserted@
includes any matter explicitly asserted if the probative value of the statement
as offered flows from the declarant=s belief
as to the matter.  Tex. R. Evid. 801(c).

There are three discrete parts to Cyndi=s
testimony regarding this event.  First is
her testimony that Lucy and Karen=s
grandmother called her and asked her to pick up the children at school because
she could not reach Brandy by phone. 
Second is her testimony about what Appellant said to BrandyCthat he
was tired of serving as her free taxi and that she might hear the phone ring if
she stopped smoking crack.  Third is what
Brandy said to Appellant and CyndiCAFuck
you.@








The grandmother=s
statement is hearsay because it was offered at least in part to prove the truth
of the matter asserted, namely, that Brandy would not answer the phone.  Appellant=s
statement to Brandy is likewise hearsay because it was offered to prove
Appellant=s belief that she did not answer
the phone because she was smoking crack. 
Thus, the trial court did not abuse its discretion by excluding those
two statements as hearsay.

Brandy=s
statement to Appellant and Cyndi, on the other hand, was a crude exclamation or
insult that did not Aassert@ any Amatter.@  Therefore, it was not hearsay, and the trial
court erred by excluding it as such.  But
the trial court did allow Cyndi and Appellant to testify that Brandy slammed
the door in their faces.  Thus, we cannot
say that the trial court=s erroneous exclusion of Brandy=s
expletive effectively prevented Appellant from presenting his defense, and the
exclusion of the statement does not rise to the level of constitutional
error.  See Walters, 247 S.W.3d at
217.








Because the error is not constitutional, rule
44.2(b) applies.  Tex. R. App. P.
44.2(b).  Under that rule, we must
disregard the error if it did not affect Appellant=s
substantial rights.  Id.; see
Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh=g), cert.
denied, 526 U.S. 1070 (1999); Coggeshall v. State, 961 S.W.2d 639,
642B43 (Tex.
App.CFort
Worth 1998, pet. ref=d).  A substantial right is affected when the
error had a substantial and injurious effect or influence in determining the
jury=s
verdict.  King v. State, 953
S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing Kotteakos v. United States,
328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); Coggeshall, 961 S.W.2d
at 643.  Conversely, an error does not
affect a substantial right if we have Afair
assurance that the error did not influence the jury, or had but a slight
effect.@  Solomon v. State, 49 S.W.3d 356, 365
(Tex. Crim. App. 2001); Johnson v. State, 967 S.W.2d 410, 417 (Tex.
Crim. App. 1998).

Under the circumstances, we have fair assurance
that the exclusion of Brandy=s
utterance did not influence the jury or had but a slight effect.  Considering Lucy=s and
Karen=s
testimony against Appellant and that Appellant was allowed to offer testimony
about animosity between the two families (albeit not to the extent or in the
manner he desired), including testimony that Brandy slammed the door in his and
Cyndi=s faces
immediately after uttering the excluded profanity, the utterance itself is
trivial, and we cannot see how its admission into evidence, if the trial court
had admitted it, would have influenced the jury or had more than a slight
effect.  We therefore hold that the trial
court=s error
in excluding the utterance was harmless, and we disregard the error.  See Tex. R. App. P. 44.2(b).

                                             Conclusion








We overrule Appellant=s sole
point, and we affirm the trial court=s
judgment.

 

ANNE
GARDNER

JUSTICE

 

PANEL:  CAYCE, C.J.; LIVINGSTON and GARDNER, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  February 5, 2009

 











[1]See Tex. R. App. P. 47.4.





[2]The State, in both its
statement of facts and its argument, asserts that Lucy gave much more extensive
testimony about her family=s run-ins with Child Protective Services (ACPS@) and the police,
including testimony that CPS and the police went to their house frequently in
2002 through 2004.  But Lucy gave the
testimony cited by the State on voir dire outside the presence of the jury, the
trial court sustained the State=s objections to the testimony, andCwhen the jury returned to
the courtroomCLucy=s testimony on the topic
was limited to her statement about contact with the Aauthorities.@





[3]Both parties= briefs conflate the
error analysis with the harm analysis. 
We will focus our attention on the error analysis first.