**Opinion filed July 30, 2009**



In The

# Eleventh Court of Appeals

————

## No. 11-08-00050-CR

————

**BILLY RAY BOLTON, Appellant**

**V.**

**STATE OF TEXAS, Appellee**

**On Appeal from the 385th District Court**

**Midland County, Texas**

**Trial Court Cause No. CR33847**

### M E M O R A N D U M   O P I N I O N

Billy Ray Bolton appeals his conviction by a jury of the offense of aggravated assault with a deadly weapon. The jury, after hearing enhancement evidence, assessed his punishment at twenty-five years in the Texas Department of Criminal Justice, Institutional Division. Bolton asserts in three issues that (1) the evidence is legally and factually insufficient to support his conviction, (2) the trial court abused its discretion by allowing Officer Douglas Crisp to give expert testimony, and (3) the trial court erred in failing to suppress Bolton's "post-duress" statement. We affirm.

Bolton urges in Issue One that the evidence is legally and factually insufficient to support his conviction. In order to determine if the evidence is legally sufficient, the appellate court reviews all of the evidence in the light most favorable to the verdict and determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). To determine if the evidence is factually sufficient, the appellate court reviews all of the evidence in a neutral light. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006) (overruling in part *Zuniga v. State*, 144 S.W.3d 477 (Tex. Crim. App. 2004)); *Johnson v. State*, 23 S.W.3d 1, 10-11 (Tex. Crim. App. 2000); *Cain v. State*, 958 S.W.2d 404, 407-08 (Tex. Crim. App. 1997); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). Then, the reviewing court determines whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence. *Watson*, 204 S.W.3d at 414-15; *Johnson*, 23 S.W.3d at 10-11.

Silvia E. Bledsoe, the complainant, testified that she lived with Bolton, with whom she had a romantic relationship. She recounted how Bolton hit her on the head with a steel pipe when they were arguing. She said that she blacked out right away and that she was bleeding "from [her] head, all the way down." She stated, "They put seven staplers [sic] in my head." Bledsoe acknowledged that she had mental problems due to a brain tumor in her head. She further acknowledged that, when not taking her medicine, she sometimes hallucinates or has fits. Bledsoe also related that, at one time, she had told police Bolton hit her with a two-by-four.

Arthur Levi Duson testified that he runs meetings with Narcotics Anonymous in Midland. He said that on one occasion in August 2007, while he was setting up for a meeting at about 7:00 p.m., a female knocked on the door. He stated that she was bloody and that the blood was coming from the side of her head. Stating that he had seen many people that have been beaten up, he described her as acting like a person who "had just got beat up." He indicated that, after he called 911, she passed out on his porch. Duson testified that he was familiar with Bolton because they had formerly hung out together. He related that, while he was on the phone with the police, Bolton was riding through the alley on a bicycle. He said he wondered why the police, who were in the area at

the time, did not see Bolton. He acknowledged that he did not see Bolton strike the complainant with a pipe.

Douglas Crisp testified that he is, among other things, a night patrol officer with the Midland Police Department. He indicated that on August 12, 2007, he was dispatched with reference to an assault. He said that he encountered "Miss Sylvia." He said she had a lot of blood on the left side of her face coming down from what he thought was a head wound. He indicated that she seemed disoriented. He related that the wound was bleeding and that there was a lot of blood. Officer Crisp testified that she said she had been struck in the head. After determining that Bolton was not at the location where he was advised he was supposed to be, Officer Crisp "put an attempt to locate out on that. And some other officers started searching in their patrol units." He stated that, after putting the attempt to locate out, he went to the emergency room to talk to the victim. He related that the complainant had described the weapon as something that had wood and pipe in it. He noted that, after arresting Bolton later in the evening, he conducted a search for the weapon. Officer Crisp said that, while he was looking for the weapon, Bolton asked what he was looking for. He indicated that, when he told Bolton he was looking for a weapon, Bolton said, "If there's no weapon, there's no evidence." He acknowledged that the weapon was never found. Midland Police Officer John McKinney also testified about hearing Bolton's statement to the effect that, if there is no weapon, there is no evidence. He also indicated that Bolton basically said it would be her word against his.

Ervin Vernon McCalister testified that he knew both Bolton and the complainant. He indicated that on August 12, 2007, he went by the house they occupied to see if they wanted to go to a 3:00 p.m. softball game. He said he chatted with Bolton until the complainant arrived. He related that, when she arrived, she said she was coming from the Salvation Army, getting something to eat. He said he left because he had to go to the ball game and he did not want to be around their arguing. He said, "[T]hey seemed like it was going to be a problem." He related that Bolton showed up at the game about thirty minutes after the game started. He acknowledged that he did not know whether Bolton had hit the complainant with a pipe. He also acknowledged that he did not know if Bolton stayed at the park, went home, or went to the Salvation Army.

Mary Clayborn McCalister testified that she had spent time with Bolton and the complainant. She said that on Sunday, August 12, 2007, she and Ervin went to Bolton's house about an hour

3

before the game. She stated that they wanted to see if Bolton wanted to go to the game. She said she had been at the park about twenty or twenty-five minutes when Bolton arrived on his bicycle. She acknowledged that she did not know what happened at the house after she left. She also acknowledged that Bolton and the complainant had "got frustrated at each other" and that she did not know how long Bolton was at the park.

We hold that the evidence is legally and factually sufficient to support Bolton's conviction. The evidence includes photographs of the complainant's head injuries. Witnesses testified to her extensive bleeding. She consistently named Bolton as the person who had assaulted her. She identified a plastic pipe as being close in size to the metal pipe that Bolton assaulted her with. The complainant told the investigating officer that she was struck with an object that consisted of wood and pipe. She also said that at one time she told the police that he had hit her with a two-by-four. At trial, she identified a pipe as being similar to the weapon. Bolton is correct that the complainant appeared confused in her testimony about details, which the complainant attributed to schizophrenia related to a brain tumor. We believe that the issues raised by Bolton are credibility issues that were for the jury to resolve. We overrule Issue One.

Bolton insists in Issue Two that the trial court abused its discretion by allowing Officer Crisp to testify that the injury suffered by the complainant was consistent with being hit with a pipe. Prior to giving this testimony, Officer Crisp had testified that he had previously observed, on six or seven occasions, wounds resulting from persons being hit in the head with blunt instruments. He said that he believed he had a good idea what it looks like when someone has been knocked in the head with a blunt instrument but that he was not an expert, not a doctor. There was no indication that Officer Crisp had ever observed a head wound that was specifically attributed to a pipe.

The State acknowledges that, to qualify as an expert witness, the witness must have special knowledge of the matter about which he is testifying and the knowledge need only exceed that of an average juror. *See Holmes v. State*, 135 S.W.3d 178, 182 (Tex. App.—Waco 2004, no pet.). While Officer Crisp may have exhibited some expertise, at least superior to that of an average juror, with respect to head wounds caused by blunt objects, there is no indication that he had any expertise at all with respect to head wounds caused by pipes. We, therefore, hold that the trial court abused its

4

discretion by allowing him to testify that the complainant's wound was consistent with a wound caused by a pipe.

We must next determine whether this error could have affected Bolton's substantial rights. TEX. R. APP. P. 44.2(b); *see King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King*, 953 S.W.2d at 271.

In closing arguments, the State focused on the complainant's injury and the fact that throughout she had been consistent in her statement that Bolton had assaulted her with a pipe. The State also reminded the jurors of Bolton's statement that "[i]f there's no weapon, there's no evidence." Bolton's counsel focused on the complainant's mental problems as they related to her credibility. While the State did mention Officer Crisp's testimony that the wound was consistent with being hit with a pipe, it did so only in the context of pointing out that Officer Crisp did not change his mind at trial when he learned more fully of the complainant's mental illness. Under the charge given to the jury, it did not matter whether the complainant was hit with a pipe or something else because the jury was instructed to find Bolton guilty if he intentionally, knowingly, or recklessly caused the complainant bodily injury by striking her with "a two-by-four, a wooden board, a pipe, a metal pipe, or a metal tube, or an object unknown to the Grand Jury." Given all of these facts, we hold that the testimony in question did not affect Bolton's substantial rights because it was not of such a nature as would have had a substantial or injurious effect or influence on the jury's verdict. We overrule Issue Two.

Bolton asserts in Issue Three that the trial court erred in failing to suppress his "post-duress" statement. We have noted above that, when Bolton learned that Officer Crisp was looking for a weapon, he volunteered the comment, "If there's no weapon, there's no evidence." Bolton concedes that this comment is admissible if it did not result from custodial interrogation and that there was evidence that it was made after questioning ended. He asks us to speculate that, at the time he made the statement, Bolton could have reasonably believed that he was responding to questions since the statement was made a short time after the initial questioning ended. We hold that, given the evidence presented, the trial court could reasonably have found that Bolton's comment was not in

5

response to any questioning, whether real or perceived. Consequently, we hold that the trial court did not abuse its discretion in failing to suppress Bolton's statement. We overrule Issue Three.

The judgment is affirmed.


PER CURIAM


July 30, 2009

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Hill, J.[1]

---

[1]John G. Hill, Former Justice, Court of Appeals, 2nd District of Texas at Fort Worth, sitting by assignment.