Calvin Eugene KING, Appellant,

v.

The STATE of Texas.

No. 72145.

Court of Criminal Appeals of Texas.

Sept. 24, 1997.

Douglas M. Barlow, Beaumont, for Appellant.

John R. DeWitt, Assistant District Attorney, Beaumont, Matthew Paul, State's Atty., Austin, for State.

### OPINION

KELLER, Judge.

Appellant was convicted in June, 1995 of the capital murder (murder in the course of a robbery) of Billy Ezell. Tex. Penal Code Ann. § 19.03(a)(2). Pursuant to the jury's answers to the special issues set forth in Texas Code of Criminal Procedure art. 37.071 §§ 2(b) and 2(e), the trial judge sentenced appellant to death. Article 37.071 § 2(g).[1] Direct appeal to this Court is auto-

matic. Article 37.071 § 2(h). Appellant raises fourteen points of error. We will affirm.

Appellant does not challenge the sufficiency of the evidence supporting his conviction. Accordingly, only a brief recitation of the facts is necessary.

Several individuals were engaged in drug trafficking at the Cedar Sands Motel during the time period near the date of the offense. On the night of the murder, appellant and Leonard Johnson bought drugs from Billy Ezell. Appellant, Johnson and Ezell were seen going in and out of appellant's motel room throughout the night and early morning. Later that morning, appellant returned to his rented apartment. He was covered in blood. He possessed crack cocaine and blood stained money, and bragged to his girlfriend that he "had to kill a white boy because the white boy was trying to kill him." Appellant told his girlfriend that he "hit (Ezell) over the head with a lamp, put a cord around his neck and slice (sic) his throat." One of the motel's owners discovered Ezell's body in the room registered to appellant. The causes of death were multiple stab wounds and blunt force injuries.

### I.

■ In appellant's first point of error, he complains that the court committed reversible error when it failed to comply with the mandatory provisions of art. 34.04. Article 34.04 establishes notice requirements regarding the venire panel:

> Where the venire is exhausted, by challenges or otherwise, and additional names are drawn, ... the clerk shall compile a list of such names promptly after they are drawn and if the defendant is not on bail, the sheriff shall serve a copy of such list promptly upon the defendant.

In the present case, the trial court, seeing a potential need for a supplemental panel, secured an additional jury pool from which twenty names were drawn. Once the supplemental list of twenty veniremen became

---

**1.** Unless otherwise indicated all future references to Articles refer to the Code of Criminal Proce-  dure.

available, the trial court presented defense counsel with the list:

The State: Also, Your Honor, if I may at this point and so that the record is clear, I have secured from the District Clerk's office a certified copy of a list of the pool from which the supplemental venire of 20 will be drawn. Presented that to the Court. May the record reflect that the defendant or his counsel has in fact been served with that?

The Court: Let the record reflect that I gave the list to Mr. Michael Laird (defense counsel) yesterday, June 1st, 1995, of the additional people that have been summoned as potential venire people in this case. Is that correct Mr. Laird?

The State: Thank you Your Honor.

Mr. Laird: That's correct Your Honor

The Court: Thank you. We're in recess.

Eleven days after this exchange took place and six days after the jury had been selected, appellant filed a motion to dismiss the jury and declare a mistrial on the basis that the trial court provided the supplemental list to counsel rather than having the sheriff personally serve the defendant as required by statute.

■ We do not reach the merits of appellant's first point of error as he has failed to preserve error for review. To preserve an issue for appellate review, the defendant must make a timely request, objection or motion stating specific grounds for the ruling he desires the trial judge to make; the objection must be made at the earliest opportunity. Tex.R.App. Proc. 52(a)(West 1996)(Now Rule 33.1); *Martinez v. State*, 867 S.W.2d 30, 35 (Tex.Crim.App.1993) (and cases cited therein). Appellant claims that his objection to improper service was timely because he filed his motion prior to trial. "Prior to trial," however, was not the earliest opportunity for appellant to object. To preserve error, defense counsel should have objected when he was presented with the list. Appellant's first point of error is overruled.

## II.

■ In points of error two and three, appellant complains that the trial court committed reversible error by failing to grant his challenges for cause regarding veniremen ten and forty-one. It is appellant's contention that neither venireman could consider the minimum punishment for the offense of murder, and were thus challengeable on the basis that they had bias or prejudice against the law upon which appellant was entitled to rely. *See* art. 35.16(c)(2).

We need not address the merits of this allegation because any error would be harmless. Because appellant was convicted of capital murder, any error relating to the punishment range of the lesser-included offense of murder made no contribution to appellant's conviction or punishment. *See Dowthitt v. State*, 931 S.W.2d 244, 251 (Tex. Crim.App.1996); *Jones v. State*, 843 S.W.2d 487 (Tex.Crim.App.1992) *cert. denied* 507 U.S. 1035, 113 S.Ct. 1858, 123 L.Ed.2d 479 (1993). Appellant's points of error numbers two and three are overruled.

## III.

Appellant's fourth and fifth points of error concern an out-of-court statement made by Angelita Williams. Police officer Leslie Apple testified that a woman at the crime scene, Williams, "stated to me that a black male that she knew as King [appellant] ... possibly killed Billy." Appellant objected to the statement on two grounds; (1) that the statement was hearsay; and (2) that the statement was opinion testimony with no basis. Appellant's fourth point of error addresses the hearsay objection and his fifth point of error addresses the objection regarding opinion testimony.

### A. HEARSAY

Appellant contends that the trial court committed reversible error in admitting hearsay. The State offered Williams' statement as an excited utterance under Texas Rule of Criminal Evidence 803(2).[2] The trial court, after a hearing outside the presence of the jury, determined that the statement met

---

**2.** Subsequent references to Rules are to the Tex-    as Rules of Criminal Evidence.

the requirements of the excited utterance exception. Rule 803(2) states:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> (2) Excited Utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

■ Appellant argues that Williams was not under the stress of excitement caused by the event or condition. Appellant contends that Williams had time to reflect, that she was "not relaying information she had just received, nor had the event prompting her demeanor just occurred." Appellant also contends that the statement did not relate to the event or condition—discovery of the body—because her statement regarded who caused the death rather than the dead body itself.

■ In determining whether a statement is an excited utterance under Rule 803(2), the pivotal inquiry is "whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event." *McFarland v. State*, 845 S.W.2d 824, 846 (Tex.Crim.App.1992). The passage of time is but one factor to consider. *Id.* Thus, even if the event had not "just" occurred, Williams' statement may nevertheless be admissible if she was "still dominated" by the emotions surrounding the body's discovery.

During the hearing outside the presence of the jury, Officer Apple testified that shortly after 11:00 a.m., she and another officer arrived at the motel where the murder took place and determined that Ezell was dead. They secured the scene, removed everybody, and told fire department personnel not to go back into the motel room. Then, within thirty minutes of having arrived at the motel, Officer Apple walked downstairs and saw Williams for the first time. Apple testified that Williams was crying profusely and in an extreme emotional state. This testimony supports the notion that Williams was still under the emotional stress of a startling event, i.e. discovering that someone she had seen alive earlier that morning was dead.[3]

■ Finally, appellant's contention that the statement did not relate to the startling event is without merit. The startling event—the discovery that Ezell was dead—clearly prompted Williams' statements about Ezell's comings and goings and who might have killed him. The statements about Ezell's death are related to the discovery that he was dead. Because the record supports the trial court's finding that the statement was admissible as an excited utterance, we cannot say that it abused its discretion in so finding.[4] Appellant's fourth point of error is overruled.

## B. OPINION

■ Notwithstanding the statement's admissibility as an excited utterance, appellant contends in a related point of error that the trial court erred in admitting the statement because it was a personal opinion with no basis.[5] As previously noted, appellant objected to Officer Apple relating the above quoted statement not only on hearsay grounds but also "as being opinion testimony with no basis for the opinion."

In support of his argument, appellant cites authority for the propositions that no witness may voice an opinion as to guilt or innocence, and also that an opinion amounting to choos-

---

3. Officer Apple testified that Williams declared that she last saw Billy Ezell at 7:00 a.m. the morning of the murder.

4. The admissibility of an out-of-court statement under a hearsay exception is within the trial court's discretion, subject to review only for abuse. *Coffin v. State*, 885 S.W.2d 140, 149 (Tex.Crim.App.1994).

5. We note that the statement is not *per se* admissible simply because it meets the requirements of

Rule 803(2). As noted in the Advisory Committee notes to Federal Rule of Evidence 803, a statement that meets the requirements of a hearsay exception may nevertheless be inadmissible on other grounds:

> The exceptions are phrased in terms of nonapplication of the hearsay rule, rather than in positive terms of admissibility, in order to repel any implication that other possible grounds for exclusion are eliminated from consideration . . .

ing up sides is inadmissible. *See Boyde v. State,* 513 S.W.2d 588 (Tex.Crim.App.1974); *Mowbray v. State,* 788 S.W.2d 658 (Tex. App.—Corpus Christi 1990, pet. ref'd), *cert. denied,* 498 U.S. 1101, 111 S.Ct. 999, 112 L.Ed.2d 1082 (1991).

We find appellant's argument unpersuasive. According to Officer Apple, Williams stated that "she *believed* that appellant *possibly* killed" Ezell. When read in context of the remainder of Williams' statement, we do not construe this initial offering as an opinion that appellant was guilty of capital murder. When asked why she thought such a thing, Williams elaborated:

> The State: And did she state for you the basis for that statement?

> Officer Apple: She stated that Billy had been coming back and forth all throughout the night at the hotel with these gentlemen.

Williams' initial statement was an introduction to the events that she had personally observed the night before the murder. Thus, appellant's contention that the statement had no "basis" is simply incorrect. Williams' statement was based on the combination of events she witnessed on the night preceding the murder, culminating in her never seeing the victim alive again after he entered appellant's motel room less than four hours before the body was discovered. Those events led her to believe that appellant possibly killed Ezell. A trial court acting within his discretion could have found that Williams had a "basis" for her opinion. Point of error number five is overruled.

### IV.

■ In his sixth point of error, appellant asserts that the trial court erred in admitting a hotel registration card bearing appellant's name. During the investigation of the offense, officers retrieved a hotel registration card indicating that appellant was registered in the room in which they found the deceased's body. When the State attempted to admit the card, appellant objected on the grounds that it was hearsay. The State established, to the trial court's satisfaction, that the card met the business records exception

to the hearsay rule. Rule 803(6) permits the admission of business records:

> (6) Records of Regularly Conducted Activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by affidavit that complies with Rule 902(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. 'Business' as used in this paragraph includes any and every kind of regular organized activity whether conducted for profit or not. . . .

Appellant contends that the State failed to establish the proper predicate for the card's admission as a business record. Specifically, appellant argues that the State failed to establish that the form was made by someone with personal knowledge, such as a motel employee or representative. Appellant attempts to gain support for his argument from the hotel owner's testimony. The owner, Prabhubhai Bhatkta, testified that he did not know specifically who filled out the portion of the registration card bearing appellant's name, nor did he recognize appellant. Appellant asserts that because Bhatkta could not remember specifically who wrote appellant's name, the State failed to show it was entered by someone with personal knowledge. Therefore, appellant contends that the State failed to meet the predicate requirements of Rule 803(6). We disagree.

Bhatkta also testified that (1) he owned the motel; (2) that the registration card was a standard form; (3) the forms are filled out— the top portion by the guest and the bottom portion by a motel employee—simultaneously with check-in; (4) he maintained the forms in the regular course of business; and (5) he is the custodian of the forms. This testimony supports the trial court's determination that the hotel registration form meets the re-

quirements of 803(6). Appellant's sixth point of error is overruled.

## V.

■ Appellant's seventh, eighth, and ninth points of error attack the trial court's admission of State's exhibits eighty-eight, eighty-nine, and ninety. These exhibits are pen packets containing information regarding appellant's previous incarcerations in the Texas Department of Criminal Justice. Each contains a photograph, judgment, social and criminal history (including case summaries of the respective offenses), lists of residences, and fingerprints. Additionally, number-eighty eight contains an order revoking appellant's probation and both eighty-eight and ninety contain disciplinary hearing records. Appellant objected to the case summaries and disciplinary records on the grounds that they were not properly certified and that they were hearsay.[6]

Assuming without deciding that the case summaries and disciplinary records were improperly admitted, our examination of the record in its entirety leads us to conclude that the alleged error did not affect a substantial right of the appellant. *See* Tex. R.App. Proc. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *Kotteakos v. U.S.*, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946). In light of the properly admitted evidence of future dangerousness, we find that the complained of documents in the present case did not have a substantial or injurious influence on the jury's decision.

As noted, appellant objected to case summaries and disciplinary records contained within each exhibit. The case summaries contain a brief criminal history based on an interview with appellant and then describe the offense for which each pen packet was made. The potentially damaging information in the case summaries are admissions attributed to the appellant. The summaries contain alleged admissions of prior arrests for theft, shoplifting, fighting and traffic tickets. Additionally, two of the summaries discuss appellant's parole revocation and drug use.

Exhibits eighty-eight and ninety contain the disciplinary reports to which appellant objected. The disciplinary report in exhibit eighty-eight is a factual recitation of how appellant failed to return to TDC after a five-day situational furlough. The disciplinary report in exhibit ninety describes nine separate disciplinary violations. All of them were either failing to report to work assignments on time or failing to report to academic classes as instructed.

There are several reasons that the admission of the case summaries and disciplinary reports was harmless. First, the properly admitted judgments of appellant's prior convictions showed, chronologically, convictions for theft, theft, and burglary of a habitation. Appellant committed the burglary of a habitation while on parole from the theft charges. While theft and burglary are not the most violent of crimes, going from theft to burglary of a habitation shows an escalating pattern of disrespect for the law from which a jury could draw an inference of future dangerousness. *See generally Barley v. State*, 906 S.W.2d 27, 30 (Tex.Crim.App.1995).[7] Further, we have on at least one occasion recognized that burglary of a habitation tends to show future dangerousness. We stated in *Cockrum v. State*, 758 S.W.2d 577, 593 (Tex. Crim.App.1988):

Burglary provides an inherent potential to escalate into violence, and ... attempted burglary of a habitation, provides a particularly high potential for violence. The legislature has acknowledged the reality of this threat by grouping burglary of a habi-

6. In his brief, appellant alleges that he objected on the grounds of hearsay within hearsay. The record does not support such an assertion. Regardless, had appellant objected at trial on the grounds of hearsay within hearsay, our disposition of these points of error would not change.

7. In *Barley*, there was evidence of nine prior offenses: burglary of a motor vehicle, possession of marijuana, possession of cocaine, unauthorized use of a motor vehicle (2), delivery of marijuana (2), trespass to a building and unlawfully carrying a weapon. We held that "[w]hile these offenses are not overtly violent, they do show an escalating and on-going pattern of disrespect and continued violations of the law." *Barley*, 906 S.W.2d at 30–31.

tation with burglary while armed with a deadly weapon and causing injury to a person while in the course of committing burglary as aggravating elements. Tex. Pen.Code, § 30.02(d). A rational jury could well interpret these prior offenses as inherently dangerous practices, fraught with potentially life-threatening possibilities.

While the offense at issue in *Cockrum* was attempted burglary of a habitation, the analysis is relevant to the completed offense.

Second, in answering the special issues, the jury may consider all of the evidence adduced at the guilt/innocence phase of the trial, in addition to the evidence presented at the punishment phase. *Barnes v. State,* 876 S.W.2d 316, 322 (Tex.Crim.App.1994). This includes the facts surrounding the offense. In addition to beating Ezell in the head with a lamp and choking him with the lamp cord, appellant stabbed Ezell at least thirty-seven times. Of those thirty-seven stab wounds, six were to the head. One wound went three inches into the crown of Ezell's head. A forensic pathologist testified that nine stab wounds in the back were inflicted while Ezell was motionless. Ezell ultimately suffered a punctured and collapsed lung and both his pulmonary artery and jugular vein were severed. Murder by its very nature is brutal, but we have recognized that a stabbing death is particularly brutal. In *Martinez v. State,* 924 S.W.2d 693, 696 (Tex.Crim.App.1996), we noted that a knife is a weapon which

> by its very nature, forces the user to be in such close proximity to his victim that he is often touching him or comes into contact with him on each blow. Furthermore, the character of the weapon is such that sever-

al thrusts are often utilized in order to ensure death—each additional thrust potentially indicating to any rational juror that such a personal act requires a wanton and callous disregard for human life.

The sheer brutality of this murder could indicate to a jury that appellant was a future danger to society.[8] The guilt/ innocence phase, however, produced additional evidence of future dangerousness. A State's witness testified that while watching a television news broadcast about the murder, appellant said to a cohort "I done kill (sic), and I'll kill again." That appellant would plan to "kill again," and admit to planning to "kill again" is strong evidence of future dangerousness.

Third, the State did not emphasize the complained of documents. While the State mentioned the "intake" reports[9] and disciplinary reports twice, it did not go into any detail of the contents. In fact, the only emphasis came from defense counsel. In an effort to show that appellant would not be a future danger to society, defense counsel emphasized the disciplinary reports both during guilt/innocence and closing arguments. Through an expert witness, he attempted to establish that nothing in the pen packets showed violence or indicated future dangerousness.[10] In closing arguments, defense counsel encouraged the jury to look at the disciplinary reports because they showed no violent activity:[11]

> I mean, even forgetting the doctor, whether he said whatever he said, just looking at the history in these pen packets— you go back through here and you

---

8. We have often held, in the context of an attack on the sufficiency of the evidence, that the facts of the murder alone may be sufficient to support an affirmative answer to the future dangerousness question. *See e.g. Sonnier v. State,* 913 S.W.2d 511, 516–17 (Tex.Crim.App.1995).

9. Our reading of the Statement of Facts indicates that the State referred to the *Social and Criminal History* document, wherein the case summaries appear, as "intake reports."

10. The following transpired:
    Defense Counsel: Did you find anything else within these three exhibits, 88, 89, and 90, other than a reference to an assault about 20

years ago, that was— that showed any indication of violence that [appellant] ever participated in?
Expert Witness: No.

11. There was one potentially damaging statement in the disciplinary report in exhibit eighty-eight. The last sentence reads "[i]nmate King was placed in pre-hearing detention due to being a threat to the security of the institution." While arguably evidence of future dangerousness, in light of all the other evidence, that this statement does not substantially or injuriously affect the jury's decision.

look at these disciplinary records. And I encourage, take these back.

If you've never seen these, the disciplinary records you get in here are he failed to turn out for work detail or he got up late or he didn't go to a class. That's it. That's it.

That the State did not emphasize the reports minimizes the deleterious effect, if any, the documents had on the jury's decision.

Finally, the subject matter of the case summaries included some minor offenses and drug use. As previously noted, the case summaries contained alleged admissions of prior arrests for theft, shoplifting, fighting, and traffic tickets. These offenses occurred during appellant's youth and resulted in his being detained in a juvenile detention center. The case summaries also stated that appellant admitted to using marijuana, amphetamines, and cocaine.

The potential harm of this information is defused by properly admitted evidence. The judgments in exhibits eighty-eight and eighty-nine showed convictions for theft. Also, two witnesses at trial testified that appellant bought and smoked crack cocaine in the time frame surrounding the murder. Thus, evidence of theft and cocaine use came in through other sources. The remaining evidence of fighting and traffic violations, and marijuana and amphetamine use is harmless when considered in light of the properly admitted evidence at both punishment and guilt/innocence. These relatively minor offenses occurred while appellant was a juvenile, resulting in his confinement in the Dallas County Juvenile Detention Center.[12] In comparison, theft and burglary are serious felonies from which, as we noted, *supra*, a jury could draw inferences of future dangerousness. Moreover, appellant committed these felonies during adulthood between the ages of twenty-eight and thirty-two. Similarly, evidence of appellant's cocaine use would tend to be perceived as significantly more severe than evidence of marijuana and amphetamine use. Overall, the relatively minor offenses referred to in the case summaries pale in comparison to the properly admitted evidence of theft, burglary and cocaine use.

While the case summaries and disciplinary reports did contain some potentially harmful evidence, that evidence was rendered insignificant by properly admitted evidence of future dangerousness. The nature of the escalating offenses, the brutality of the murder, appellant's statement that he would kill again, and the fact that the State did not emphasize the complained of evidence drastically overshadow evidence of fights and traffic tickets. Likewise, evidence that appellant smoked crack cocaine before and after the murder is substantially more severe than evidence that he at one time used marijuana and amphetamines. Even if the jury had read and considered the case summaries and disciplinary reports (there is no evidence that it did), the influence the reports had, in light of all the other evidence of future dangerousness, was not "substantial or injurious." *Kotteakos*, 328 U.S. at 776, 66 S.Ct. at 1253, 90 L.Ed. at 1572. Appellant's seventh, eighth, and ninth points of error are overruled.

## VI.

In his tenth point of error, appellant submits that the Due Process Clause of the Fourteenth Amendment to the United States Constitution requires this Court to engage in a proportionality review in death penalty cases. Appellant concedes that such a review is not required under the Eighth Amendment, *Pulley v. Harris*, 465 U.S. 37, 44–54, 104 S.Ct. 871, 876–81, 79 L.Ed.2d 29 (1984), but insists that it is required under the Fourteenth Amendment. We have previously decided this issue contrary to appellant's assertion. *See McFarland v. State*, 928 S.W.2d 482, 497 (Tex.Crim.App.1996); *Hughes v. State*, 897 S.W.2d 285, 294 (Tex. Crim.App.1994). Appellant's tenth point of error is overruled.

## VII.

In point of error number eleven, appellant asserts that the death penalty, as it is pres-

---

12. Although not clear from the record, we assume fighting falls under misdemeanor assault. *See* Tex. Pen.Code § 22.01.

ently administered in Texas, constitutes cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution. This too we have previously decided against appellant. *McFarland v. State*, 928 S.W.2d at 508 (Tex.Crim.App. 1996). Appellant's point of error number eleven is overruled.

### VIII.

Appellant's point of error number twelve asserts that the statutory *Penry*[13] special issue regarding mitigation is facially unconstitutional under the Eighth and Fourteenth Amendments to the United States Constitution because it permits the type of open-ended discretion condemned by the United States Supreme Court in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). We rejected this identical claim in *McFarland, supra,* and in *Lawton v. State*, 913 S.W.2d 542, 560 (Tex.Crim.App. 1995). Point of error twelve is overruled.

### IX.

In point of error number thirteen, appellant argues that the capital sentencing statute's definition of "mitigating evidence" is facially unconstitutional because it limits the Eighth Amendment concept of "mitigation" to factors that render a capital defendant less morally "blameworthy" for commission of the capital murder. "Mitigating evidence" is defined as "evidence that a juror might regard as reducing the defendant's moral blameworthiness." Art. 37.071, § 2(f)(4); 37.0711, § (f)(3). Specifically, appellant contends that this definition is unconstitutionally narrow. He contends that the statutory definition limits jurors' consideration of such evidence to those mitigating factors that specifically implicate the defendant's moral blameworthiness. We have held this claim to be without merit. *See Jones v. State*, 944 S.W.2d 642 (Tex.Crim.App.1996); *Shannon v. State*, 942 S.W.2d 591 (Tex.Crim.App.1996). Moreover, appellant fails to specify what if any evidence he presented which was mitigating but the

jury was unable to consider. *See McDuff v. State*, 939 S.W.2d 607 (Tex.Crim.App.1997); *Williams v. State*, 937 S.W.2d 479, 492 (Tex. Crim.App.1996). Appellant's thirteenth point of error is overruled.

### X.

In his fourteenth and final point of error, appellant contends that his death sentence was arbitrarily imposed in violation of the Eighth and Fourteenth Amendments because the death penalty is disparately applied in similar cases depending on the county in which a particular capital murder is prosecuted. Appellant complains that economic considerations are taken into account and that, simply put, Jefferson County, with a larger tax base, is in a better financial position to seek the death penalty in a higher percentage of cases than smaller or poorer counties. As such, appellant contends that the death penalty violates the Eighth and Fourteenth Amendments because it is applied unequally to similarly situated defendants.

This identical argument was raised and rejected in *Bell v. State*, 938 S.W.2d 35, 55 (Tex.Crim.App.1996). In *Bell,* we did not, however, reach the merits of the appellant's claim. We held that the appellant provided "no empirical data, caselaw, or other factual basis to support his claim" and thus "there is no foundation upon which we can make a determination regarding the merits of his claim." *Id.* The present case is similarly without merit. Appellant provides no data, facts or even argument from which this Court could draw a foundation to address the merits of his claim. While it may be true that some counties have more financial resources than others, appellant makes only generalizations regarding this hypothesis.[14] Appellant's fourteenth point of error is overruled. Having found no reversible error, we affirm the trial court's judgment.

---

**13.** *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989).

**14.** We note that the attorney representing appellant in the present case also represented the

appellant in *Bell.* This may explain the identical claims regarding Jefferson County's financial wherewithal to seek the death penalty.

BAIRD, J., joins only the judgment of the Court for the reasons stated in *Matamoros v. State,* 901 S.W.2d 470, 479 (Tex.Crim.App.1995) (Baird, J., concurring).

OVERSTREET, J., not participating.