

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-13-00217-CR

ROSS EDWIN ROE                                                      APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

----------

## FROM THE 89TH DISTRICT COURT OF WICHITA COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

In two issues, Appellant Ross Edwin Roe appeals his conviction for possession of a deadly weapon in a penal institution. *See* Tex. Penal Code Ann. § 46.10(a) (West 2011). We will affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Roe was an inmate in the James V. Allred Unit of the Texas Department of Criminal Justice (TDCJ). Correctional Officer Michael Sheets was on duty, handing out necessities. He opened the food tray slot to Roe's cell door and asked if Roe needed any necessities. Roe turned around, pointed an object at Officer Sheets, and said either "I want to stab you" or "I'm going to stab you." Officer Sheets closed the food tray slot and called for the sergeant on duty, Sergeant Ernest Ferguson. Officer Sheets stood guard over Roe's cell to make sure Roe did not hurt himself or dispose of the weapon while waiting for Sergeant Ferguson to arrive. When Sergeant Ferguson arrived, he opened the food tray slot and ordered Roe to throw the weapon out of the cell. Roe again pointed the object at Officer Sheets and said either "I'm going to stab you" or "I'm going to stick you." Sergeant Ferguson took out his pepper spray and again ordered Roe to throw out the weapon. Roe complied. The object was a sharpened piece of plastic framing from a mirror.

Roe's defensive theory at trial was that he was using the plastic object to keep the hot water running in his sink so that he could do laundry. Roe testified that Officer Sheets threw Roe's mail in the trash can, so Roe told him that he "was going to whoop his ass." Roe said that he was washing clothes at the time and that he did not have the plastic object in his hand.

2

### III. SUFFICIENCY OF THE EVIDENCE

In his first issue, Roe argues that the evidence is insufficient to support the jury's finding that the sharpened piece of plastic that he possessed was a deadly weapon.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Blackman v. State*, 350 S.W.3d 588, 595 (Tex. Crim. App. 2011).

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Winfrey*, 393 S.W.3d at 768. Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex.

3

Crim. App. 2011); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Temple*, 390 S.W.3d at 360.

A person commits an offense if, while confined in a penal institution, he intentionally or knowingly possesses or conceals a deadly weapon in the penal institution. Tex. Penal Code Ann. § 46.10(a)(2). The penal code defines a "deadly weapon" as either "(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury" or "(B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 1.07(a)(17) (West Supp. 2013). "Serious bodily injury" is "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 1.07(a)(46).

To determine whether an object was a deadly weapon, "a jury may consider all facts, including (1) the physical proximity between the victim and the object, (2) the threats or words used by the defendant, (3) the size and shape of the weapon, (4) the weapon's ability to inflict death or serious injury, and (5) the manner in which the defendant used the weapon." *Adame v. State*, 69 S.W.3d 581, 584 (Tex. Crim. App. 2002) (Meyer, J., concurring) (citations omitted). No one factor is determinative. *See Brown v. State*, 716 S.W.2d 939, 946–47 (Tex.

4

Crim. App. 1986); *Wilson v. State*, 391 S.W.3d 131, 137 (Tex. App.—Texarkana 2012, no pet.).

To determine whether a particular object is "capable of causing death or serious bodily injury" under penal code subsection 1.07(a)(17)(B), capability to cause death or serious bodily injury must be evaluated in light of the facts that actually existed at the time of the offense. *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005); *Brown*, 716 S.W.2d at 946–47; *see* Tex. Penal Code Ann. § 1.07(a)(17)(B). Subsection B's plain language does not require that the actor actually intend death or serious bodily injury; that is, "[t]he placement of the word 'capable' in the provision enables the statute to cover conduct that threatens deadly force, even if the actor has no intention of actually using deadly force." *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000).

Here, the sharpened piece of plastic was introduced into evidence as State's Exhibit 2. Sergeant Ferguson testified that the object is a plastic piece of a mirror frame approximately five inches long with one end sharpened to a point and with a three-inch handle. He explained that the object could be used to puncture someone's lungs, heart, or liver, or it could take out an eye. Officer Sheets and Sergeant Ferguson both testified that the object was a deadly weapon. Officer Julie Diamond with the Office of the Inspector General testified that she had investigated the incident with Roe and that, based on her experience, the plastic object possessed by Roe was a deadly weapon. She and Sergeant Ferguson both testified that they have seen similar items used in prison

5

to cause death or serious bodily injury. Officer Sheets and Sergeant Ferguson testified that Roe held the sharpened piece of plastic in his hand, pointed it at Officer Sheets, and threatened to stab him. Both men testified that they had no doubt that Roe intended to use the object to stab Officer Sheets.[2]

Regarding the physical proximity between Roe and Officer Sheets, the door to Roe's cell was a solid steel door with two Plexiglass windows and a food tray slot. Officers could lock the food tray slot, and when it was closed, it was hard to open without a special tool. Roe argues on appeal that because he was in his cell with no physical access to Officer Sheets, he could not have used the plastic object as a deadly weapon. But the food tray slot was open when Roe initially threatened Officer Sheets with the weapon, and Roe himself testified that inmates can reach through those slots and stab officers "all the time." Roe also testified that he knows how to "jimmy" open the food tray slot and that cell doors

---

[2]Roe contends that "[t]he State never disproved that [Roe]'s plastic implement was used to keep the water flowing" in his sink. And he points out Sergeant Ferguson's testimony that some inmates use razor blades to hold down the hot water button and that those inmates would not be written up for possession of a deadly weapon simply because they possessed a razor blade. But this argument overlooks the second statutory definition of a deadly weapon; that is, a deadly weapon is defined not only as something that was manifestly designed or made in order to inflict serious bodily injury or death, *see* Tex. Penal Code Ann. § 1.07(a)(17)(A), but also anything that in the manner of its use or intended use is capable of causing death or serious bodily injury, *see id.* § 1.07(a)(17)(B). Under subsection B's definition of a deadly weapon, even assuming Roe made the sharpened plastic object for the purpose of keeping the hot water running so that he could wash clothes, the question for the jury was whether the sharpened plastic object was capable of causing death or serious bodily injury *in the manner of its use or intended use* when Roe pointed it at Officer Sheets and threatened to stab him. *See id.*

6

can be rigged so that inmates can "jump out and stab somebody." Thus, contrary to Roe's arguments, evidence existed that he did have physical access to Officer Sheets when he threatened to stab him with the sharpened plastic object.

Viewing the evidence in the light most favorable to the prosecution, a reasonable factfinder could conclude that the sharpened plastic object that Roe pointed at Officer Sheets while telling him that he wanted to or was going to stab him was, in the manner of its use or intended use, capable of causing death or serious bodily injury. *See* Tex. Penal Code Ann. § 1.07(a)(17)(B); *see also id.* § 46.10(a)(2). We overrule Roe's first issue.

## IV. EXTRANEOUS OFFENSE EVIDENCE

In his second issue, Roe argues that the trial court abused its discretion by admitting evidence of his prior convictions from over twenty years ago during the guilt-innocence stage of trial.

Roe testified on his behalf during the guilt-innocence stage. On direct examination, he testified to his fourteen felony convictions from 1990 and 2001. On cross-examination and over Roe's objection, the State elicited testimony about seven other felony convictions from the 1970s—five burglary convictions, one escape conviction, and one theft of corporal personal property conviction.[3]

---

[3]Roe also volunteered during cross-examination that the State "left out" one prior conviction from 1970 "for aggravated robbery where two people got shot," bringing his total prior felony convictions to twenty-two.

7

Roe complains in part of his second issue that the State failed to provide him with notice of its intent to use evidence of his felony convictions from the 1970s pursuant to rule of evidence 609(f). *See* Tex. R. Evid. 609(f) (providing that impeachment evidence of convictions is inadmissible if proponent fails to give advance written notice upon request). Roe requested notice in advance of trial and made an oral motion in limine at a pretrial hearing requesting a ruling that the State not refer to his prior convictions from the 1970s until the trial court decided whether, among other things, the State gave proper notice under rule 609. But the trial court's ruling denying Roe's motion in limine was a preliminary ruling that preserved nothing for appellate review. *See Geuder v. State*, 115 S.W.3d 11, 15 (Tex. Crim. App. 2003). When the State attempted to question Roe about his 1970s felony convictions at trial, defense counsel objected only that they were too remote in time. Thus, he did not preserve his notice complaint for appeal, and we overrule this part of Roe's second issue. *See* Tex. R. App. P. 33.1; *cf. Geuder*, 115 S.W.3d at 15.

Roe argues in the remainder of his second issue that his felony convictions from the 1970s were inadmissible because they were too remote in time and their probative value did not substantially outweigh their prejudicial effect.

We need not decide whether the trial court abused its discretion by admitting evidence of Roe's felony convictions from the 1970s because, even assuming error, the record does not establish harm. Because any alleged error in the admission of this evidence was not constitutional, we apply rule 44.2(b)

8

and disregard the alleged error if it did not affect Roe's substantial rights. *See* Tex. R. App. P. 44.2(b); *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999); *see also King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997); *Geuder v. State*, 142 S.W.3d 372, 375–76 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (op. on remand).

A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)). Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). In making this determination, we review the record as a whole, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We may also consider the jury instructions, the State's theory and any defensive theories, whether the State emphasized the error, closing arguments, and even voir dire, if applicable. *Id.* at 355–56.

Here, Roe did not dispute that he possessed the sharpened plastic object while in his cell at a penal institution. *See* Tex. Penal Code Ann. § 46.10(a)(2).

9

And we have detailed above the sufficiency of the evidence to support a finding that the object was a deadly weapon. *See id.* § 1.07(a)(17)(B). Roe testified on direct examination that he had been in TDCJ for the past twenty-three years. He testified that in 1990, he received thirteen felony convictions: four forgery convictions, one escape conviction, one unlawful possession of a firearm conviction, and seven aggravated robbery with a deadly weapon convictions. Roe also said that he had a 2001 conviction for possession of a deadly weapon in a penal institution. He testified that he pleaded guilty to all of the above offenses "because [he] was guilty." Roe does not complain of the admission of these prior felony convictions on appeal, and it is unlikely that the jury would have placed greater weight, if any, on Roe's seven felony convictions from the 1970s after having heard about his thirteen more recent felony convictions. *See, e.g.*, *Porter v. State*, No. 14-02-01109-CR, 2003 WL 22770041, at *3 (Tex. App.—Houston [14th Dist.] Nov. 25, 2003, no pet.) (mem. op., not designated for publication); *see also King v. State*, 953 S.W.2d 266, 273 (Tex. Crim. App. 1997) (explaining that the potential harm from improperly admitted evidence of extraneous bad acts was defused by properly admitted evidence of other extraneous offenses).

We conclude that, in the context of the entire case against Roe, including Roe's testimony regarding his fourteen other felony convictions not at issue here, any error in the trial court's admitting evidence of Roe's prior felony convictions from the 1970s did not have a substantial or injurious effect on the jury's verdict

and did not affect Roe's substantial rights.  *See King*, 953 S.W.2d at 271.  Thus, even assuming error, we disregard it.  *See* Tex. R. App. P. 44.2(b).  We overrule Roe's second issue.

## V. Conclusion

Having overruled Roe's two issues, we affirm the trial court's judgment.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  February 13, 2014