# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00021-CR

**Kevin Scott, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM COUNTY COURT AT LAW NO. 8 OF TRAVIS COUNTY
### NO. C-1-CR-17-501171, HONORABLE CHUCK MILLER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Kevin Scott was charged with indecent exposure for allegedly exposing his penis "in a public place, to Olivia Keller, who did not know [him] and did not invite such exposure." *See* Tex. Penal Code § 21.08 (setting out elements of offense and specifying that offense "is a Class B misdemeanor"). At the end of the guilt-or-innocence phase, the jury found Scott guilty. During the punishment phase, Scott and the State entered into an agreement regarding the punishment that should be imposed. The county court at law rendered its judgment of conviction and assessed Scott's punishment at 100 days' confinement in county jail in accordance with the agreement. *See id.* § 12.22 (setting out permissible punishment range for "a Class B misdemeanor"). On appeal, Scott contends that the county court at law erred by overruling his objection regarding the admission of an audio and video recording of Keller. We will affirm the county court at law's judgment of conviction.

## BACKGROUND

As set out above, Scott was charged with indecent exposure. During the trial, several witnesses were called to the stand, including Keller, who was the alleged victim; Officer Vanessa Bremner, who responded to a 911 call made by Keller; Officer Cantu,[1] who was involved in the investigation of this case; Detective Chris Bernal, who interviewed Scott as part of the investigation; and Christine Alexandra, who testified as a defense witness. In addition, a recording from Officer Bremner's dashboard camera, a recording of the 911 call that Keller made, and a recording of Keller going through a photo lineup of potential suspects in this case were all admitted into evidence and played for the jury.

In her testimony, Officer Bremner explained that she responded to a 911 call and that she talked with Keller about the alleged incident. Regarding her conversation with Keller, Officer Bremner testified that Keller related that she was outside exercising when a "blue Ford Taurus-type vehicle" passed her, that the car turned around, that the car pulled up beside her, that the male driver whistled at her to get her attention, that she noticed that the driver had exposed his penis, and that she yelled at the driver to leave. Further, Officer Bremner recalled that Keller provided the license-plate number for the vehicle. In addition, Officer Bremner stated that she provided Keller with a victim-assistance-information pamphlet but that Keller did not want to use any victim-assistance services.

During Officer Bremner's testimony, the State sought to admit into evidence a recording from Officer Bremner's dashboard camera chronicling her conversation with Keller.

---

[1] The record does not mention Officer Cantu's first name.

2

Scott objected and asserted that the statements on the recording were hearsay and that the excited-utterance exception to hearsay did not apply. In a hearing held outside the presence of the jury, Officer Bremner testified that she arrived at the scene approximately thirty minutes after the alleged offense, that Keller was not riled up, that Keller "stated that she was not traumatized but that she was grossed out" by what had happened, and that Keller indicated that she did not need to use any victim-assistance services. At the end of the hearing, the county court at law overruled the objection and stated that Scott had "a running objection to this entire line of testimony and the presentation of the information on the" recording.

After the county court at law made its ruling, the recording was published to the jury. On the recording, Keller told Officer Bremner that a male driver whistled at her to get her attention, that the driver's pants were not zipped, that the driver's penis was "fully out," that the driver's penis was erect when she saw it, that she was "grossed out" by the incident, and that she told the driver to leave.

Next, Officer Cantu was called to the stand. In her testimony, Officer Cantu related that she ran the license-plate number that Keller gave to the 911 operator, that the owner of the vehicle was Scott, that she found Scott's Facebook page, and that the page contained a status update with a photograph of a Ford Taurus. In addition, Officer Cantu testified that Keller described the perpetrator as "a white male or Hispanic male" and that the photograph associated with the Facebook profile was consistent with that description and with a picture from the police database for the owner of the vehicle. During Officer Cantu's testimony, a photograph of Scott from his Facebook

3

page as well as a photograph of one of his status updates were admitted into evidence. The status update displayed a blue Ford Taurus with the caption "I finally got a freaking vehicle."

After Officer Cantu finished testifying, the State called Keller to the stand, and she related that she was exercising at a park on the day in question, that a car passed her, that the car turned around, that the car pulled up next to her with the window down, that she had never seen the driver before, that the driver was "sitting in the driver's seat with his penis out," that his penis was erect, that his pants were unzipped but not all the way down because she could see the pants, that she did not see any tattoos on the driver, that she did not recall seeing the driver's hand on his penis, that she screamed at the driver to leave, that she remembered the license-plate number, and that she called the police. During her testimony, Keller explained that although the incident occurred quickly, she was "[p]retty confident" that Scott was the perpetrator. Moreover, she stated that the car found on Scott's Facebook page was the "[s]ame" or "very similar" to the one that she saw on the day in question. Additionally, Keller related that as part of the investigation she was given a photo lineup of six individuals, that she went through the lineup twice, that she thought two of the individuals could have been the perpetrator during her first time through the lineup, that she identified Scott as the perpetrator during the second time through the lineup, that she had some doubts when going through the pictures, and that she was "fairly confident" in her choice.

During Keller's testimony, a recording of the 911 call that she made was played for the jury as well as a recording of her going through the photo lineup. On the 911 recording, Keller stated that a man drove past her with his penis exposed and that the driver was masturbating, and Keller described the car as a blue sedan and gave the license-plate number for the vehicle. Further,

4

Keller stated that the man was Hispanic, Asian, or Middle Eastern. On the photo-lineup recording, Keller can be seen going through the lineup twice. Further, the recording documents that Keller related that two of the men looked similar and could have been the perpetrator when going through the photos the first time, that she deliberated for some time before determining during the second pass through the photos that Scott was the perpetrator, that she asked whether she could look through the photos for a third time, that Keller was told that it was the police department's policy to only allow individuals to view the lineup twice, that she explained that she selected an individual that she believed was the perpetrator, and that she stated that she was "fairly confident" that Scott was the perpetrator based on her memory of the perpetrator's face.

After Keller finished testifying, Detective Bernal was called to the stand. In his testimony, Detective Bernal related that he contacted Scott about the investigation and that Scott agreed to come in for an interview. Regarding the interview, Detective Bernal explained that Scott denied committing the offense in question multiple times but that Scott answered some of the questions in an unusual way. For example, Detective Bernal stated that when he asked Scott if he flagged women down and then exposed his penis to them, Scott answered by denying that he flagged women down without also denying that he exposed his penis to unsuspecting women. Additionally, Detective Bernal related that when he asked Scott if "this was something that he did serially or if it was a one-time thing," Scott paused before answering and stated that it was "a one-time deal."

During Detective Bernal's testimony, a recording of Scott's interview was played for the jury. On the recording, Scott generally denied driving with his penis exposed and specifically denied the allegations in this case, but Scott also admitted that he drives a blue Ford Taurus and that he was driving around the time of the offense. Furthermore, Scott stated that if the police "think

5

[he] did it," he "was sorry that he did it" and that "this was just a one-time deal" rather than a behavior that he regularly engages in.

Finally, Scott called Christine Alexandra to the stand, and she testified that Scott has a tattoo on his arm and a large tattoo on his thigh.

After the witnesses finished testifying and after both sides rested and closed, the jury found Scott guilty.

## DISCUSSION

In one issue on appeal, Scott challenges the propriety of the county court at law's ruling admitting into evidence the recording from Officer Bremner's dashboard camera. When presenting this issue, Scott contends that the recording was hearsay and that the excited-utterance exception did not apply in this case because Keller was not under the excitement of a startling event at the time that she interacted with Officer Bremner. *See Zuliani v. State*, 97 S.W.3d 589, 596 (Tex. Crim. App. 2003) (noting that "a reviewing court must determine whether the statement was made 'under such circumstances as would reasonably show that it resulted from impulse rather than reason and reflection'" and that "critical determination" is whether declarant was dominated by emotions or excitement of event at time statement is made (quoting *Fowler v. State*, 379 S.W.2d 345, 347 (Tex. Crim. App. 1964))). In his brief, Scott notes that the county court at law did not review the recording before making its ruling and then points to the testimony from Officer Bremner given during the hearing convened after Scott objected to the admission of the recording as support for the proposition that the excited-utterance exception did not apply. In particular, Scott notes that Officer Bremner testified that she arrived on the scene approximately 30 minutes after the alleged

6

offense, that Keller was not "riled up," that Keller responded to the questions that Officer Bremner asked, that Keller stated that she was not traumatized by the event, that Keller stated that she was simply "grossed out," and that Keller declined to take advantage of any victim-assistance services. In light of the preceding, Scott asserts that the county court at law abused its discretion when it determined that the requirements for the excited-utterance exception were satisfied here. *See* Tex. R. Evid. 801(d), 802 (defining hearsay and stating that hearsay is generally inadmissible), 803(2) (setting out excited-utterance exception to general rule barring admission of hearsay); *see also* *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011) (explaining that appellate courts review trial court's ruling regarding admission or exclusion of evidence for abuse of discretion).[2]

For purposes of resolving this issue on appeal, we will assume without deciding that the county court at law abused its discretion by overruling Scott's hearsay objection. If an appellate court determines that a trial court abused its discretion when making an evidentiary determination, the appellate court must then evaluate whether the defendant was harmed by the trial court's ruling. *See Kirby v. State*, 208 S.W.3d 568, 574 (Tex. App.—Austin 2006, no pet.).

---

[2] As an initial matter, we note that the State urges in its appellee's brief that Scott did not preserve this complaint for appellate consideration. *See* Tex. R. App. P. 33.1 (setting out procedure for preserving appellate issue). Although the State acknowledges that Scott objected to the admission of the recording, the State asserts that Scott was required to but did not specify which portions of the recording constituted impermissible hearsay. *See Watson v. State*, No. 05-16-00140-CR, 2017 WL 6506313, at *3 (Tex. App.—Dallas Dec. 20, 2017, no pet.) (mem. op., not designated for publication) (stating that "[a] trial court does not abuse its discretion when it admits the exhibit in its entirety if the objecting party fails to segregate the admissible from the inadmissible"); *Sanchez v. State*, No. 05-14-00908-CR, 2015 WL 2400783, at *3 (Tex. App.—Dallas May 20, 2015, no pet.) (mem. op., not designated for publication) (determining that trial court did not abuse its discretion in admitting entire 911 recording when defendant failed to specifically point out "the objectionable portion"). We will assume for the sake of argument that Scott preserved his claim for appellate consideration.

The erroneous admission of evidence is not constitutional error. *See Casey v. State*, 215 S.W.3d 870, 885 (Tex. Crim. App. 2007). Accordingly, the error must be disregarded unless it affected substantial rights. Tex. R. App. P. 44.2(b). A defendant's substantial rights are affected "when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). In determining whether a defendant's substantial rights were affected, the reviewing "court should consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case." *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000); *see Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). "The reviewing court may also consider the jury instructions, the State's theory and any defensive theories, closing arguments and even voir dire, if applicable," and the court may also consider "whether the State emphasized the error." *Motilla*, 78 S.W.3d at 355-56. If the reviewing court, "after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect," then the defendant's substantial rights were not affected. *Id.* at 355 (quoting *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)).

When asserting that the admission of the dashboard recording harmed him, Scott points to portions of the record and asserts that the evidence shows that Keller "was only fairly certain that she picked the right person in the lineup and wanted to review the lineup a third time," that Keller's physical description of the driver was inconsistent with Officer Cantu's testimony regarding how Keller described the perpetrator, and that Keller "could not describe accurately

8

what she actually saw in the car, whether the suspect[']s pants were unzipped, or pulled down to the thighs or even further and whether the suspect was masturbating, holding his penis or did not have his hand on his penis at all." Further, Scott insists that those inconsistencies "were largely wiped away with the admission of her out of court statements which occurred ab[o]ut 30 minutes after the event and where she was not subject to difficult or prying questions" and that the error harmed him "and affected his substantial rights in presenting a sound defense and significantly contributed to the conviction in this case."

As an initial matter, we note that the recording was only a few minutes long and that the statements on the recording indicating that a crime had occurred because an individual drove up next to Keller and exposed his erect penis to her before driving off were also introduced through the testimony of Officer Bremner and Keller as well as through the recording of the 911 call that Keller made shortly after the incident. Further, we note that although Scott contends that he was harmed by the admission of the recording because the statements made on the recording were not subject to cross-examination, Scott was able to extensively cross-examine Keller regarding her recollection of the events in question, regarding her description of the perpetrator, regarding her ability to identify a suspect during the photo lineup, and regarding how certain she was that Scott was the perpetrator. Moreover, although Scott asserts that there are inconsistencies between Keller's testimony and the 911 recording regarding whether the perpetrator was masturbating or otherwise holding his penis during the offense and further asserts that Keller was unable to describe the degree to which the perpetrator's pants had been lowered, Keller consistently stated to the police and testified that she was able to see the perpetrator's erect penis when he drove up next to her and exposed himself.

9

Additionally, Scott emphasized the alleged inconsistencies summarized above during his closing arguments and further attempted to undermine Keller's credibility by noting that Keller specifically testified that she did not see any tattoos on the perpetrator despite the testimony from Alexandra demonstrating that Scott has tattoos on his arm and thigh. Moreover, as part of his defensive strategy, Scott was able to argue during his closing argument that the potentially inculpatory statements that he made during his interview with Detective Bernal were made as a result of intentionally deceptive questions posed by Detective Bernal and were made after Scott repeatedly denied any wrongdoing. Furthermore, the State made no reference to the recording in its opening or in its closing argument.

In addition, evidence indicating that Scott was the perpetrator was admitted through several sources. *Cf. Geuder v. State*, 142 S.W.3d 372, 376 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (noting that "the presence of overwhelming evidence of guilt may be considered" when performing "a general 44.2(b) harm analysis"). First, Keller stated on the recording of her going through the photo lineup that she was fairly certain that the photo of Scott was a photo of the perpetrator, and Keller identified Scott as the perpetrator during her testimony at trial. Additionally, the 911 recording documented that Keller described the perpetrator as driving a blue sedan and gave the license-plate number to the police, and Officer Bremner testified that Keller described the car as a blue Ford Taurus. Furthermore, Officer Cantu explained that Scott was the owner of the car with the license-plate number that Keller observed on the perpetrator's car, and a photograph from Scott's Facebook page showed that Scott had purchased a blue Ford Taurus. Moreover, Keller testified that the car depicted in that photo was the same as or similar to the one that she saw on the day of the

10

offense.  Finally, the testimony from Detective Bernal and the recording of Detective Bernal's conversation with Scott demonstrated that although Scott initially denied committing the offense in question, he also made statements indicating his guilt including admitting to driving a blue Ford Taurus on the day in question, expressing his remorse for committing the offense if the police believed that he had committed the offense, and indicating that his behavior on the day in question "was just a one-time deal" rather than a pattern of behavior.

In light of the preceding, we must conclude that any error stemming from the county court at law's decision to admit into evidence the recording from Officer Bremner's dashboard camera did not have "a substantial and injurious effect or influence in determining the jury's verdict" and therefore did not affect Scott's substantial rights. *See King*, 953 S.W.2d at 271.  Accordingly, we hold that any error would be harmless and overrule Scott's issue on appeal. *See* Tex. R. App. P. 44.2(b).

## CONCLUSION

Having overruled Scott's sole issue on appeal, we affirm the county court at law's judgment of conviction.

_____

David Puryear, Justice

Before Justices Puryear, Goodwin, and Bourland

Affirmed

Filed:   October 11, 2012

Do Not Publish