**Affirmed and Memorandum Opinion filed September 26, 2019.**



In The

# Fourteenth Court of Appeals

---

NO. 14-18-00374-CR
NO. 14-18-00375-CR
NO. 14-18-00376-CR
NO. 14-18-00377-CR
NO. 14-18-00378-CR
NO. 14-18-00379-CR
NO. 14-18-00380-CR

---

**CRAIG JUBY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 427th District Court**
**Travis County, Texas**
**Trial Court Cause Nos. D-1-DC-16-100359, D-1-DC-16-100360, D-1-DC-16-100361, D-1-DC-16-100362, D-1-DC-16-100363, D-1-DC-16-301894, and D-1-DC-16-301895**

---

## MEMORANDUM OPINION

In this appeal from multiple convictions for assault, appellant complains in four overlapping issues about testimony that identified a firearm by the sound of its

discharge. Because we conclude that any error in the admission of that testimony was harmless, we overrule each issue and affirm the trial court's judgments.

## BACKGROUND

Appellant is a bipolar man who lived in a rural area with his father and sister. On the day in question, appellant discharged a pistol into his father's television set as his father was watching the morning news over breakfast. Appellant then discharged the pistol five or six more times into the wall. He did all of this without provocation and without ever speaking a word.

The father was hit in the head by the pistol, but not by a bullet. He left the room to escape appellant's shooting, just as appellant's sister was arriving home.

The sister met her father on the front porch, as appellant approached from behind. With a look of agitation, appellant raised his pistol and pointed it at the back of his father's head. The sister tried to deescalate the situation, but appellant appeared disoriented "like he was not all there." Appellant approached his sister, pressed the barrel of his pistol into her abdomen, and threatened to shoot her.

Appellant did not shoot though. He allowed his father and sister to leave, and they called 911.

Law enforcement arrived on scene and soon learned that appellant had barricaded himself inside the home, where there was a cache of firearms. Multiple agencies were called in to assist. During the ensuing standoff, there were over thirty officers, a canine unit, a SWAT team, two armored vehicles, and two helicopters.

Appellant exited the home at one point and removed all of his clothing, but he did not surrender. The SWAT team responded by shooting him with non-lethal bean bag rounds, which stunned appellant to the ground. The canine unit was then

2

supposed to hold appellant on the ground as officers apprehended him, but the dog failed to engage, and appellant returned to the home.

The SWAT team approached in the two armored vehicles. One vehicle remained at the front of the home, and the other moved to the side. The side unit broke out the windows on the bottom floor and threw in several cans of tear gas, which did not achieve the desired result. Appellant went upstairs and demanded to a crisis negotiator that the side unit needed to leave within ten minutes or "something really bad is going to happen." Appellant claimed that he had armor piercing bullets, and "thousands and thousands of rounds of ammunition."

The side unit then broke out a window on the second floor and launched two more rounds of chemical munitions into the home. As the side unit was preparing to launch a third round into the second floor, gunfire erupted from the home. The SWAT team inside of the side unit quickly closed the overhead turret, and heard metal rain down from above. The metal most likely originated from an air conditioning unit on the second floor, which sustained obvious damage during the gunfire. There were no markings at the top of the armored vehicle indicative of bullet strikes.

The gunfire was rapid, but it did not last for long. The standoff, however, persisted for more than twenty-four hours in all, until appellant eventually surrendered.

Seven charges resulted from the incident. Appellant was indicted twice for aggravated assault of a family member (one assault against the father, and the other assault against the sister). And he was indicted five more times for aggravated assault of a public servant (one assault for each SWAT team member within the armored vehicle on the side of the home). A jury convicted appellant of each offense, and the trial court assessed his punishments.

3

## FAMILY MEMBER CASES

Appellant's trial counsel filed notices of appeal in all seven assault cases, but his representation ended with the trial, and different counsel was appointed for purposes of this appeal.

In this court, appellate counsel has filed two briefs, one for the family member cases and one for the public servant cases. In the family member cases (and just those cases), counsel has concluded that the appeals are wholly frivolous and without merit. Counsel's brief meets the requirements of *Anders v. California*, 386 U.S. 738 (1967), because the brief presents a professional evaluation of the record and demonstrates why there are no arguable grounds to be advanced. *See High v. State*, 573 S.W.2d 807, 812–13 (Tex. Crim. App. 1978).

A copy of counsel's brief was delivered to appellant, and he was advised of the right to examine the appellate record and file a pro se response. As of this date, more than sixty days have passed and no pro se response has been filed.

We have carefully reviewed the record and counsel's brief, and we agree that the appeals in the family member cases are wholly frivolous and without merit. Further, we find no reversible error in the record. We need not examine the merits of each point addressed in an *Anders* brief when we have determined that there are no arguable grounds for review. *See Bledsoe v. State*, 178 S.W.3d 824, 827–28 (Tex. Crim. App. 2005).

## PUBLIC SERVANT CASES

In the remaining cases, appellant, through his appellate counsel, complains about a line of testimony that was made by three different witnesses, all of whom were members of the SWAT team. Two of the witnesses were in the armored vehicle that launched chemical munitions from the side of the home, and the other witness

was in the second armored vehicle that remained at the front of the home. All three witnesses testified that they heard gunfire erupt after the chemical munitions were launched, and that the gunfire sounded as though it originated from an AK-47 assault rifle.

Appellant objected each time this testimony arose, arguing that only an expert could identify a firearm by its sound, and complaining that the witnesses did not qualify as experts and had not been designated as such. The trial court overruled appellant's objections.

Appellant now complains of those rulings in his first three issues. For the sake of argument, we can assume without deciding that the trial court abused its discretion by admitting the challenged testimony. The question then becomes whether appellant suffered harm under the standard for nonconstitutional error.

Nonconstitutional error must be disregarded unless it affects a defendant's substantial rights. *See* Tex. R. App. P. 44.2(b). An error affects a defendant's substantial rights when the error has a substantial and injurious effect or influence on the jury's verdict. *See King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). If the error had no influence or only a slight effect on the verdict, the error is harmless. *See Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

The challenged testimony could not have been harmful in these cases because the State was not required to identify the type of firearm that was used in the commission of the assaults. The State was only required to prove that appellant used or exhibited a deadly weapon. *See* Tex. Penal Code § 22.02(a)(2). The State met that burden with overwhelming evidence.

The helicopter crew testified without objection that, before the gunfire erupted, appellant was seen carrying a long rifle that resembled an AK-47. The

5

SWAT team members testified that they heard gunfire "coming from the residence" and that they saw shards of glass and pieces of metal coming out of the second floor window "at a very, very high velocity." The evidence further showed that, during the standoff, appellant was the only occupant of the home, which contained a full cache of firearms, including an AK-47 that was discovered after appellant's surrender. This evidence overwhelmingly established that appellant used and exhibited a firearm, which is a deadly weapon. We therefore conclude that any testimony about the type of firearm that was used and exhibited was unlikely to have any influence on the jury's verdict.

In a related fourth issue, appellant complains that the challenged testimony caught him by surprise and left him unable to prepare a rebuttal. This argument fails because the testimony was harmless for the reasons just stated. Furthermore, a firearms instructor testified on behalf of the defense, and the instructor said (in response to a question by defense counsel) that even a layperson could identify an assault rifle by the sound of its discharge. That testimony effectively negates appellant's complaint that he was caught by surprise.

## CONCLUSION

The trial court's judgments are affirmed.

/s/    Tracy Christopher
Justice

Panel consists of Justices Christopher, Bourliot, and Zimmerer.

Do Not Publish — Tex. R. App. P. 47.2(b).