

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1072-19

## DANIEL THOMAS BARNES, Appellant

## v.

## THE STATE OF TEXAS

## ON STATE'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE SIXTH COURT OF APPEALS
## GREGG COUNTY

**NEWELL, J., delivered the opinion of the unanimous Court.**

Daniel Thomas Barnes was convicted of burglary of a habitation in a bench trial. The question before us is whether the erroneous admission of two out-of-state misdemeanor convictions during the punishment phase of Appellant's trial was harmful. In light of the properly admitted punishment evidence—including victim impact evidence, evidence of Appellant's membership in the Aryan Brotherhood and evidence of his

multiple felony convictions—we hold that it wasn't. Consequently, we reverse the judgment of the court of appeals.

**Background**

Appellant and his girlfriend, Cassidy Taylor, ransacked and destroyed a house owned by Michael Minshew. The two "beat in" the doors and windows and poured blue-colored oil throughout the house and back porch, ruining carpets, furniture, professional photographs, and valuables. They took electronic devices, including computers, iPads, iPhones, video games, and an Xbox; rifles; jewelry; a safe containing identification and other personal documents, including social security cards, birth certificates, and passports; clothing; a customized golf cart; personal effects; and items of sentimental value. These items were taken from every room in the house, including the bedrooms of Minshew's children.[1]

Appellant was charged by indictment with a single count of burglary of a habitation. Appellant had multiple prior felony convictions, and the State filed notice of its intention to use one of them, out of Miller County, Missouri, to enhance Appellant's second-degree charge to a first-degree

---

[1] A more detailed account of the commission of the offense can be found in the court of appeals' opinion. *See Barnes v. State*, 585 S.W.3d 643, 649–51 (Tex. App.—Texarkana 2019).

felony.[2]  The trial court found Appellant guilty.

During the punishment phase, the State presented evidence of the impact of the charged offense on one of the victims.  Michael Minshew explained how the offense was not only a tremendous inconvenience to him but also how it was terrifying to his wife and children.  Over the two-month period to repair and restore his home, Minshew had to fight daily to convince his wife and kids that it was safe to move back home. The damage caused by the oil alone had directly cost Minshew more than $10,000.

The State then presented evidence of Appellant's membership in the Aryan Brotherhood of Texas—a violent, dangerous, white-supremacist gang known for dope transactions and property crimes.  Detective James Bray of the Longview Police Department specifically noted Appellant had gang-related tattoos on his body: a swastika, lightning bolts, the words "Aryan Pride", and the letters "G-F-T-B-D", believed to stand for "God forgives. The Brotherhood doesn't".

Additionally, the trial court admitted evidence of Appellant's

---

[2] *See* TEX. PENAL CODE § 30.02 (c) (an offense under this section is a second-degree felony if committed in a habitation); TEX. PENAL CODE § 12.32(a) ("An individual adjudged guilty of a felony of the first degree shall be punished by imprisonment in the Texas Department of Criminal Justice for life or for any term of not more than 99 years or less than 5 years.").

extensive criminal history: three felony forgery convictions in Missouri; a felony conviction for possession of a controlled substance in Illinois; a state-jail felony conviction for theft in Texas; a state-jail felony conviction for burglary of a building in Texas; a misdemeanor conviction for criminal trespass in Texas; and two misdemeanor convictions for theft and forgery in Tennessee. The trial court admitted evidence of these prior convictions over Appellant's objection. Appellant did not offer any punishment evidence.

During closing arguments, the State summarized Appellant's prior convictions and emphasized his membership in a gang associated with violence. Appellant's trial counsel argued that Appellant "obviously" had a substance abuse problem and needed rehab.[3] Counsel then asked the court to find that drugs had contributed to the offense so that when Appellant became eligible for parole he could participate in the Substance Abuse Felony Punishment Facility (SAFPF) program. The State reemphasized Appellant's prior record and argued that he "was given every opportunity" to take responsibility for his drug issue but did not.

The trial court found the enhancement allegation regarding his prior

---

[3] Trial counsel relied on the State's exhibit of a recorded jail-house conversation between Appellant and his mother, during which his mother said, "If they offer you that you need to jump on it. You need that."

felony conviction in true. Prior to announcing Appellant's sentence, the trial court said that the case came down to Appellant's prior record and to the offense itself. The trial court expressed concern regarding Appellant's prior record and rehabilitation:

> I do agree with Mr. Hagan that rehab would be beneficial for you, that you were probably on drugs when this offense was committed. The problem is I see that you've had chances before, and other states have given you chances and you still maintain you're on -- probably still on drugs.

The trial court subsequently sentenced Appellant to forty years' imprisonment, well within in the five-to-ninety-nine-year, or life, punishment range.

## Appeal

On appeal, Appellant argued that the evidence was legally insufficient to link him to the alleged prior offenses, and, therefore, the trial court erred in admitting them into evidence at punishment. The court of appeals agreed only as to the Tennessee convictions (Exhibits 22 and 23), concluding that they were erroneously admitted because Appellant's only link to them was his relatively common name and a signature.[4] The court then determined that this erroneous admission was

---

[4] *Barnes*, 585 S.W.3d at 649–51.

harmful to Appellant, having had more than "a slight effect" on his sentence.[5]

According to the court of appeals, none of Appellant's prior offenses were violent in nature.[6]  Additionally, the trial court's prior-chances comments indicated that the trial court had considered the Tennessee convictions and that they may have affected Appellant's punishment.[7] Because it could not be sure whether those two convictions influenced the trial court, the court of appeals affirmed the judgment of conviction, reversed the trial court's judgment on punishment, and remanded the cause for a new punishment hearing.[8]  We granted review to consider whether the admission of the prior convictions amounted to reversible error.

## Standard of Review

The parties agree that in this case the erroneous admission of the extraneous offense evidence at issue is non-constitutional error.[9]

---

[5] *Id.* at 652.

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] TEX. R. APP. PROC. 44.2(b).

Non-constitutional errors are harmful, and thus require reversal, only if they affect an appellant's substantial rights.[10]  A substantial right is affected only when the error had a substantial and injurious effect or influence in determining the verdict or punishment.[11]  If an appellate court has a fair assurance from an examination of the record as a whole that the error did not influence the trial court, or had but a slight effect, it will not overturn the trial court's verdict.[12]  In making this determination, the reviewing court considers everything in the record, including (1) the character of the alleged error and how it might be considered in connection with other evidence; (2) the nature of the evidence supporting the verdict; (3) the existence and degree of additional evidence indicating guilt; and (4) whether the State emphasized the complained error.[13]

## Analysis

We granted review to determine solely whether the court of appeals

---

[10] *Id.*; *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018); *Haley v. State*, 173 S.W.3d 510, 518 (Tex. Crim. App. 2005).

[11] *Thomas v. State*, 505 S.W.3d 916, 926 (Tex. Crim. App. 2016) (quoting *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997)).

[12] *See Gonzalez*, 544 S.W.3d at 373; *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000).

[13] *Gonzalez*, 544 S.W.3d at 373 (citing *Motilla v. State*, 78 S.W.3d 352, 356–58 (Tex. Crim. App. 2002)); *Haley*, 173 S.W.3d at 518 (also citing *Motilla*, 78 S.W.3d at 355–56).

erred in holding that Appellant was harmed by the admission of the two Tennessee convictions (Exhibits 22 and 23).[14] After examining the entire record, we have fair assurance that this admission did not have a substantial and injurious effect or influence.[15] Consequently, we conclude that this non-constitutional error was harmless.

First, the nature of the evidence supporting the verdict weighs in favor of a harmless-error conclusion. Here, the nature of the evidence supporting the trial court's punishment verdict was strong. Even without the Tennessee convictions, Appellant had three felony forgery convictions; a felony possession conviction; a state-jail felony theft conviction, a misdemeanor criminal trespass conviction; and, most recently, a state-jail felony burglary conviction. These prior convictions spanned five years and three states.

Moreover, Appellant's other prior convictions established that he was unlikely to respond well to any rehabilitative effort. Appellant had previously received community supervision twice, in two different states;

---

[14] The issue of whether the court of appeals erred in holding that the Tennessee convictions were erroneously admitted into evidence was not granted.

[15] Tex. R. App. Proc. 44.2(b) ("Any [non-constitutional] error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."); *King*, 953 S.W.2d at 271 (under harm analysis for non-constitutional error, error must be disregarded unless it had a substantial or injurious effect or influence).

however, it was revoked both times. Indeed, the trial court was concerned about Appellant's previous attempts for rehabilitation; while it agreed with defense counsel that rehab would be beneficial, Appellant had already been given chances by other states but was still on drugs.

Second, the existence and degree of additional evidence indicating guilt also support a harmless-error conclusion. As the court of appeals observed, there was overwhelming evidence of Appellant's guilt. Minshew's neighbor witnessed Appellant at the scene of the crime with his girlfriend loading Minshew's property, which bore his fingerprints, into his car. Appellant was found in possession of the stolen property a short time after Minshew reported the burglary. And there was testimony that Appellant "wanted to make a deal" to protect his girlfriend.

Moreover, in addition to Appellant's prior convictions, there was other relevant evidence admitted at trial that justified Appellant's lengthy sentence independent of the admission of Appellant's Tennessee misdemeanor convictions. The evidence showed that Appellant had committed a particularly egregious burglary that not only effectively destroyed the residence but also inflicted severe financial and psychological harm on the victims in this case. Additionally, the evidence showed that Appellant is a member of a violent, white-supremacist gang

described as a "danger to the community."

Third, the character of the alleged error and how it might be considered in connection with other evidence similarly supports a harmless-error conclusion. Here, the Tennessee convictions were not particularly inflammatory, especially when viewed in connection with the other evidence in the case. The two convictions did not establish anything about Appellant's character or propensity for criminal activity that had not already been fully established by the other evidence that was properly admitted.[16] And the trial court did not need either of the Tennessee misdemeanor convictions to permissibly impose the forty-year sentence; only Appellant's prior Missouri felony conviction was necessary to increase the punishment range.[17] It is very unlikely that the two

---

[16] The Tennessee convictions showed that Appellant was willing to commit property offenses. However, that aspect of Appellant's character had already been fully established by the three Missouri felony forgery convictions (Exhibit 18); the Texas state-jail felony theft conviction (Exhibit 20); the Texas state-jail felony burglary of a building conviction (Exhibit 21); and evidence of the primary offense, felony burglary of a habitation. *See King*, 953 S.W.2d at 271-73 (noting that the potential harm of the wrongful admission of case summaries and disciplinary reports was "defused" by the properly admitted evidence—including judgments of King's prior convictions for theft and burglary of a habitation, which showed an "escalating pattern of disrespect for the law").

[17] As the court of appeals recognized, Appellant's second-degree offense for burglary of a habitation was punishable in the first-degree felony range because the trial court found the State's enhancement allegation "true". Therefore, Appellant could have been sentenced "for life or for any term of not more than 99 years or less than 5 years." TEX. PENAL CODE § 12.32(a). Consequently, Appellant's argument that he "was sentenced to double what the maximum sentence would have been (20 years) had it not been enhanced based on his priors" is incorrect.

Tennessee misdemeanor convictions had any meaningful effect on the trial court when it had seven other prior convictions— four-out of-state felony convictions, two Texas state-jail felony convictions, including one for burglary, and one Texas misdemeanor conviction—before it.[18]

Lastly, the lack of the State's emphasis of the two priors in question during closing argument likewise suggests the complained of error did not have a substantial or injurious effect. During closing arguments, the State only briefly discussed the Tennessee convictions; it identified the offenses, when and where the offenses occurred, the length of probation received, and that the judgment had Appellant's name and a signature. But neither the details of probation nor the specific facts of the offenses were discussed.[19] And although the State made a few passing references to these convictions,[20] a review of the record shows that the State's argument focused on all of Appellant's convictions, including specifically mentioning that he had four prior felonies. The State also emphasized

---

[18] *See Green v. State*, No. 01-01-01129-CR, 2003 WL 360515 at *3 (Tex. App.—Houston [1st Dist.] Feb. 20, 2003, pet. ref'd) (mem. op., not designated for publication) (finding no harm in the improper admission of three misdemeanor convictions when the defendant was shown to have numerous felony convictions).

[19] *See King*, 953 S.W.2d at 272 ("the State did not emphasize the complained of documents. While the State mentioned the 'intake' reports and disciplinary reports twice, it did not go into any detail of the contents").

[20] For example, the State said that Appellant had "multiple misdemeanors."

other relevant evidence that supported the trial court's punishment verdict—Appellant's membership in a violent gang and his failure to take responsibility in Panola County for his drug issue despite being given the opportunity to do so.

Ultimately, the court of appeals relied too heavily on the trial court's statements before sentencing. The trial court's statement—"you've had chances before, and other states have given you chances and you still maintain you're on—probably still on drugs"—was made shortly after defense counsel's closing arguments emphasizing Appellant's need for rehab. The statement included a reference to all of the chances Appellant had been given, and in particular, chances to get off drugs. However, the Tennessee convictions did not involve drugs and were offered at trial without any details of the probation. This suggests that the trial court's statement should be regarded as a reference to Appellant's other convictions for which he was placed on community supervision that he could not successfully complete.

Considering the record before us, we are convinced that Appellant's two prior non-violent misdemeanor convictions did not have a substantial

impact on the trial court's punishment verdict.[21]  The strength of the other evidence admitted at trial—including the victim impact evidence, the evidence of Appellant's membership in the Aryan Brotherhood and the evidence of his criminal history—indicates that the Tennessee convictions were of minor importance.  Because there was overwhelming evidence supporting the trial court's imposed sentence, it should not have been disturbed.

## Conclusion

The admission of the Tennessee convictions did not have more than a slight effect on trial court's forty-year sentence because there was overwhelming evidence supporting the trial court's punishment verdict. Not only was the testimony regarding the egregious nature of the offense particularly compelling, but Appellant had multiple prior felony convictions that were properly admitted.  The admission of the Tennessee convictions was harmless, and the court of appeals erred in holding otherwise. Accordingly, we reverse the judgement of the court of appeals and affirm the judgment of the trial court.

---

[21] TEX. R. APP. PROC. 44.2(b); *King*, 953 S.W.2d at 271.

Delivered: February 10, 2021

Do Not Publish